## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

STANFORD DENTAL, PLLC,
individually and on behalf of all
others similarly situated,

      Plaintiff,

vs.

THE HANOVER INSURANCE
GROUP, INC. and CITIZENS
INSURANCE COMPANY OF
AMERICA,

      Defendants.

**CASE NO.**

**HON.**

**CLASS ACTION**
**JURY TRIAL DEMANDED**

_____

## CLASS ACTION COMPLAINT

## INTRODUCTION

1.    This class action broadly concerns the following issue: as between an insurance company that issues an "all-risk" businessowner's policy and a business owner policyholder who purchased "all-risk" business interruption insurance, who bears the risk when a government orders the policyholder's business closed for two and a half months?

2.    Plaintiff Stanford Dental PLLC, individually and on behalf of all others similarly situated, files this class action against Defendants, The Hanover Insurance Group and Citizens Insurance Company of America. Plaintiff purchased a standard-form all-risk "Businessowners Coverage Form" property

and casualty insurance policy from the Defendants. The Policy promised to provide coverage in the event of a risk causing (1) "direct physical loss of" or (2) "damage to Covered Property" at Plaintiff's premises.

3.     The State of Michigan under its emergency police powers issued Emergency Order No. 2020-2, effective March 24, 2020 ("the Order"). The Order prevented Plaintiff from operating its dental practice.  The State likewise ordered numerous other policyholders to cease to operate their restaurants, health care facilities, salons, retail stores, and other businesses not exempted from the Order.

4.     Like all other standard-form small business policies, The Policy provided "Business Income Coverage" and "Civil Authority." Under these coverages, if for any non-excluded reason the Plaintiff's business was "suspended," Defendants promised to pay Plaintiff's lost net income plus costs Plaintiff needed to pay payroll and maintain its business.

5.     On March 24, 2020, Plaintiff's and the class's businesses suffered "physical loss" and a "damage to" property. Both the text of the Policy and case law have interpreted "damage" or "loss" as (1) a diminution in value, (2) financial detriment, (3) curtailment of right to full ownership; (4) an undesirable outcome of a risk; or (5) an actual change in insured property causing it to become unsatisfactory for future use. "Physical damage" may occur on a microscopic or sub-cellular level.

2

Since March 24, Plaintiff's and the class's property has decayed or expired or lost value as result of the passage of time, and must be replaced. Plaintiff, along with other class policyholders, has been ordered to make physical alterations to its property in order to resume operations.

6.     Plaintiff's and the class's right to full and unencumbered use of their covered business and personal property was thus compromised. The March 24 Order was the sole, direct and only proximate cause of the business losses suffered by the Plaintiffs and the class.

7.     As the State of Michigan issued the shutdown Order, and other states issued other versions of their economic shutdowns, the insurance industry began a public campaign that a so-called "virus exclusion" prohibited any coverage "against the Pandemic." Seizing on this relatively new addition to the list of exclusions in a standard-form property policy, the industry loudly proclaimed not to even bother trying to file a claim: if the closure occurred during Covid-19, it's not covered.

8.     But this interpretation of the exclusion is utterly wrong. The Covid-19 virus was not the direct cause of the property damage at issue. The State did not order Plaintiff, or any proposed class member, to suspend its operation because its premises needed to be de-contaminated from the Covid-19 virus. The State issued its Order to ensure the *absence* of the virus, or persons carrying the

virus, from the Plaintiff's premises. And there is no evidence at all that the virus did enter Plaintiff's property or that it had to be de-contaminated.

9.     The premise under which the "virus exclusion" was included in standard-form all-risk policies like the one at issue was the opposite of the risk here. The exclusion was written in 2006 to add to the pollution and asbestos contamination exclusions. Given the intrinsic and extrinsic ambiguities in the exclusion, including Defendants' clear admissions to insurance regulators that the exclusion was meant to apply only in claims for de-contamination costs, the Court cannot enforce it against the Plaintiff or the class if asserted.

10.     Plaintiff seeks declaratory and other relief on its behalf and on behalf of all other policyholders in the State of Michigan whose claims were preemptively denied by the Defendants that there is coverage against losses and damages suffered by Michigan policyholders under each of three coverages, "Business Income Coverage," "Extended Expense Coverage," and "Civil Authority Coverage" provided by Defendants' standard-form policies of insurance. Plaintiff further seeks a declaration that the "virus exclusion" is inapplicable, procured through fraud or misrepresentation, and therefore void.

## THE PARTIES

11.     Named Class Plaintiff Stanford Dental PLLC ("Stanford") is the owner and operator of a dental practice located at 34441 8 Mile Rd., Livonia, Michigan. Stanford provides general dentistry to the public. To protect the dental practice, Plaintiff purchased a property insurance policy with policy number 07B-8692082 (the "Policy"). The policy has a term of June 8, 2019 to June 8, 2020. Plaintiff duly paid premiums on the policy, and said policy is in full force and effect today. *(Exhibit 1A).*

12.     The Policy was issued by Defendant Citizens Insurance Company of America ("Citizens"). Defendant The Hanover Insurance Group ("THG") is a publicly-traded holding company which operates in Michigan through a series of insurance companies, including Citizens.   THG provides claims handling for Citizens, including the claim submitted by the Plaintiff.

13.     Upon information and belief, THG sells insurance in Michigan substantially similar to that purchased by Stanford through captive insurance companies other than Citizens. For the avoidance of doubt, this action seeks relief against THG for coverage of "business interruption" or "business income" policies sold to any policyholder class member through any of THG's captive insurers qualified do write insurance business in Michigan.

**RELEVANT POLICY TERMS**

14.     The Policy is an all-risk insurance policy. Defendants' Policy promised to reimburse Plaintiff in the event of "physical loss to "or "damage" to all property used in the business of his dental practice as a result of any non-excluded risk.

15.     Defendants promised that: "We will pay for 'direct physical loss of or damage to a described premises caused by or resulting from any Covered Cause of Loss.'" "Described premises" include "Business Personal Property." "Personal property" includes "machinery,"  "property you own that is used in your business," and "property of others that is in your care, custody and control." Ordinary usage of these words includes computers, supplies, inventory items, and leased business equipment.

16.     The Policy provides "Business Income Coverage."  This coverage provides for loss of: "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and Continuing normal operating expenses incurred, including payroll." Under this coverage, Defendants promised to pay for up to 12 months: "For the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"


17.     The Policy provides "Extended Business Income" coverage. Under this coverage, Defendants promised to pay additional expenses relating to "damage at the described premises" after operations are resumed.

18.     The Policy provides "Civil Authority" coverage. Under this coverage, Defendants promised to pay for loss of business income in the absence of actual damage to Plaintiff's property under the following conditions:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense *caused by action* of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage….

19.     Plaintiff pleads that to the extent terms used in the "Covered Cause of Loss," "Covered Claims," "Business Income Coverage. And "Civil Authority Coverage" are used inconsistently they are ambiguous, and under Michigan coverage law must be construed against the Defendants.

## JURISDICTION AND VENUE

20.     Plaintiff Stanford is a Michigan professional limited liability company operating in Oakland County, Michigan. It is duly registered and qualified to conduct business at its stated location in Livonia, Michigan.

21.     Defendant THG is a New Hampshire corporation with its principal place of business in the state of Massachusetts. Defendant Citizens is a captive, wholly-owned subsidiary of THG. Citizens' principal place of business is located in Howell, Michigan.

22.     At all times material, each of the Defendants engaged in substantial activity on a continuous and systematic basis in the State of Michigan, by issuing and selling insurance policies in Michigan, and by contracting to insure property located in Michigan. Each Defendants sells insurance through Michigan-based agents and brokers, and is qualified to conduct insurance business within the State of Michigan. THG is qualified as a property and casualty under NAIC numbers 22292, 36064, and 10212, either directly or through a related entity. Citizens is qualified as a property and casualty insurer under NAIC number 31534.

23.     This Court's jurisdiction is based on 28 U.S.C. 1332(d) (2) and (6). There is at least one plaintiff diverse from one defendant, and the aggregate amount in controversy exceeds $5,000,000. Upon information and belief, there are hundreds or thousands of identical form policies issued by the Defendants in the State of Michigan, and each of these policyholders is a potential class member. Under the

Stanford Policy alone, Defendants may be obligated to pay in excess of $250,000 in coverage. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claims occurred within the Eastern District of Michigan, a substantial part of property that is subject of the action is situated in this district, and Defendant Citizens bound this policy through a broker located within this district.

25.     This Court has personal jurisdiction over both Defendants because Plaintiff's claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in Michigan; Defendants breaching a contract in this state by failing to perform acts required by contract to be performed in this state; and Defendants contracting to insure property in Michigan, including but not limited to the premises insured under the Policy.

26.     Defendants also purposefully availed themselves of the opportunity of conducting activities in the state of Michigan by marketing their insurance policies and services within the state, and intentionally developing relationships with brokers, agents, and customers within the state to insure property within the state, all of which resulted in the policy at issue in this action.

### ON MARCH 24, 2020 PLAINTIFF SUFFERED A COVERED

**LOSS DUE TO THE STATE OF MICHIGAN'S EXERCISE OF
POLICE POWER TO SHUT-DOWN ITS BUSINESS**

27.     On March 24, 2020, the Governor of the State of Michigan issued
Executive Order 2020-21, titled "Temporary requirement to suspend activities that
are not necessary to sustain or protect life" (the "Order"). Among the terms of the
Order are the following:

> "No person or entity shall operate a business or conduct operations
> that require workers to leave their homes or places of residence
> except to the extent that those workers are necessary to sustain or
> protect life or to conduct minimum basic operations."

> "In-person activities that are not necessary to sustain or protect life
> must be suspended until normal operations resume."

> "a willful violation of this order is a misdemeanor."

28.     The Order barred Plaintiff from operating his business at the insured
premises. At the same time, Plaintiff has incurred fixed costs necessary to maintain
the existence of the practice.

29.     The State's exercise of police powers is a "Covered Cause of Loss." It
caused "damage to" "property [Plaintiff] own[s] that is used in [its] business,"
including Plaintiff's "machinery," Plaintiff's "leased personal property," and
"property of others that is in [Plaintiff's] care, custody and control."

30.     Under Michigan law, "property" is both the tangible good and the
possessor's right and interest to its use.  Michigan law defines "damage" as "injury

or harm that reduces value, [or] usefulness." Michigan law defines "damage to property" as an interference with rights of ownership, possession, or enjoyment. Physical alterations to property may involve microscopic, sub-cellular, aesthetic, and other alterations that are not apparent to visual inspection. Additionally, loss of use, loss of functionality, and decay, are "direct physical damage" or "damage to property" under this all-risk Policy.

31.     The property Plaintiff uses in its business, as defined, has been damaged. It cannot be used for business activity in accordance with its pre-Order function and status. Among the property so damaged is Plaintiff's dental equipment, certain leased equipment, medication with expiration dates, and other depreciating assets. Each of these has suffered loss of use, loss of functionality, decay, loss of value, and other forms of damage and/or loss. Upon information and belief, every business policyholder in the class has likewise suffered the same type and manner of damage or loss.

32.     In addition, according to a May 21, 2020 amendment to the Order, a condition for resumption of Plaintiff's business will include structural alterations to the premises to comply with State-imposed requirements for resumption of business activity. Upon information and belief, every business policyholder in the class has likewise suffered the same type and manner of damage or loss.

33. Plaintiff's and the class's "operations" have been "suspended" under the meaning of the Policy since the issuance of the Order. The Order has triggered "Business Income," "Extended Business Income," and "Civil Authority" Coverages.

34. The State applied its exercise of police powers to businesses throughout the State of Michigan. There are numerous businesses within a one-mile radius equally affected by the Order, and whose property rights are equally affected as those of the Plaintiff. Other non-essential businesses have suffered the same damage to property as Plaintiff. Each of their inventory has decayed. Each has been ordered to make physical alterations in order to resume ordinary business. Accordingly, all conditions for "Civil Authority" Coverage have been met.

35. Plaintiff has suffered a loss of business income since March 24, 2020. Defendants have not paid Plaintiff his "Net Income" and "continuing normal operating expenses incurred, including payroll." These losses and expenses are not excluded from coverage under the Policy.

36. Plaintiff's loss arises from the shutdown order. The Order and loss were a, natural and continuous sequence, unbroken by any new, independent cause, which produces the injury, without which such injury would not have occurred. Accordingly, the State's exercise of its police powers by and through the Order is the sole cause of the Plaintiff's and the class's loss of business income.

37.    Plaintiff provided notice of its losses and expenses to Defendants, consistent with the terms and procedures of the Policy. Defendants made a summary denial of the claim without undertaking any individual investigation. (*Exhibit 2*).

38.    Defendants' denial of coverage is perfunctory, inadequate, and contradictory. Plaintiff does not claim, that there has been Covid-19 on its premises. Nevertheless, Defendants claim that a virus exclusion operates to deny the claim and the claims of other Michigan policyholders.

39.    Upon information and belief, Defendants have disseminated the same or substantially same denial to many other Michigan insureds, and Defendants intend to conduct no individual determination of coverage with respect to any claim that arises as result of the suspension of business activities in Michigan arising from the State's exercise of police powers.

40.    Plaintiff is not obligated to plead in anticipation of a defense. Although not required, for the avoidance of doubt, Plaintiff asserts that the standard-form virus exclusion is (1) inapplicable to these claims because the existence of the threat of the Covid-19 virus was unrelated to the loss suffered by State's exercise of police powers, and (2) to the extent Defendants seek to assert the exclusion to non-cleanup actions it is ambiguous, must be construed against Defendants, and/or is void as against public policy due to misrepresentation. The ambiguity is both intrinsic and intrinsic.

41.     The exclusion began to be added to standard-form property policies after 2006. When adding the exclusion to the standard commercial property policy form, the Defendants, through their agents, misrepresented to insurance regulators what the exclusion was for, misrepresented that it would not narrow coverage, and misrepresented the apparent purpose of the exclusion.

42.     In order to be effective, the exclusion had to be approved by, among others, state insurance regulators. The Defendants, through their agents, told regulators that the reason for the amendment was for contamination removal costs in first party insurance situations. On July 6, 2006, the Insurance Services Office ("ISO") representing, among others, the Defendants, filed a circular with insurance regulators titled, "*New Endorsements Filed To Address Exclusion of Loss Due to Virus or Bacteria*." Among other things, in that document, ISO stated in relevant part:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent.
>
> In light of these concerns, we are presenting an exclusion *relating to contamination* by disease-causing viruses or bacteria or other disease-causing microorganisms.

(*Exhibit 3*, emphasis added). In light of these representations, and in reliance on them, the exclusion was added to the standard-form policies, in addition to standard-

form pollution and asbestos exclusions, to provide that this type of clean-up was also excluded.

43.     Plaintiff's claim occurred in the *absence* of virus contamination. The claim at issue is not for clean-up. Nothing in the Order compels Plaintiff or any policyholder to de-contaminate their premises. Nothing in the Order suggests that the reason for its issuance was to prevent premises from viral contamination. Defendants' denial of coverage is contrary to the plain language of the Policy, and to Defendants' corresponding promises and contractual obligations, and to its prior interpretation of and understanding of the risk of business interruption.

44.     A second ambiguity arises from the Policy itself. One of the endorsements attached to the policy, modifying the liability portion of the Policy, added an exclusion for "bacteria" and "fungi," but not for "viruses." Upon information and belief, many or most policyholders in the class purchased an identical endorsement. *(Exhibit 1B).*

45.     One reasonable interpretation of that exclusion is that the Policy would cover the Plaintiff for negligent acts that pass Covid-9 (or any other virus) to its patients, but not cover Plaintiff for costs leading to de-contamination of the premises where the patient was infected. Thus, an absurd result would ensue, that had the State ordered Plaintiff to shut down because of tortious acts relating to viral infection,

coverage would be provided, but had the State ordered Plaintiff to shut down because the facility was contaminated leading to infection, no coverage attaches.

46. Plaintiff pleads that the most plausible interpretation of the virus exclusion language cited in the denial letter is that told to insurance regulators in 2006. The exclusion would apply in the event of a loss not pleaded in this litigation. Only with that interpretation can Plaintiff's reasonable expectation of what it purchased be harmonized with the policy language.

## DEFENDANTS DENIED THE CLAIM SOLELY BECAUSE OF THE SCALE OF POTENTIAL LOSSES FOR A RISK THEY SHOULD HAVE ANTICIPATED

47. The American Property Casualty Insurance Association has said that while the US property and casualty insurance industry takes in about $6 billion in premiums a month, it is seeing small business losses at between $255 and $431 billion.

https://www.reuters.com/article/us-health-coronavirus-insurance-business/insurers-feel-the-heat-as-chefs-trump-join-calls-for-payouts-idUSKCN22628P

48. The insurance industry has written business interruption insurance for decades. It has written insurance assuming risks of government shutdown for decades. Both business interruption insurance and civil authority insurance assume loss of use and loss of access losses. There is nothing unusual about this claim except for the sheer scale of claims from businesses in at least 41 states facing their states exercising their police powers in the face of an unprecedented emergency.

49.     Facing this, the insurance industry, including THG, has publicly said that it did not "intend" to insure property damage arising from shutdown orders around the country. It has distanced itself from prior catastrophic—and covered— events like Hurricane Sandy, which caused massive property damage and resulting business interruption to its policyholders.  In contrast to its handling of Hurricane Sandy claims, for example, THG has announced both privately and publicly that its standard-form policies, do not cover any losses arising from this situation. In its recent Form 10-Q on April 28, 2020, THG said, "[W]e believe that our in-force commercial lines policies in large part do not cover business interruption losses related to the Pandemic…"

50.     In saying this, THG is echoing the insurance industry as a whole. The leading public voice for the property and casualty industry on this issue is Evan Greenberg, Chief Executive Officer for Chubb Insurance Group. Greenberg has publicly warned US policymakers that forcing insurers to pay for business interruption "would bankrupt the industry."

https://www.insurancebusinessmag.com/us/news/breaking-news/chubb-sued-by-human-rights-nonprofit-over-covid19-business-interruption-coverage-221072.aspx

51.     THG's recent SEC acknowledges that:

Anticipated losses associated with business interruption exposure, …. could also have a negative impact on future loss reserve development. …. Underwriting results and operating income could be adversely affected by … significant events or emerging risks, such as risks related to … pandemic or man-made factors like terrorism.

THG 10-K 2/24/20.

52.    It appears that THG and other large property and casualty insurers have simply drawn a hard line that every claim relating to this situation, whether property or casualty, will be denied, and a collective decision has been made to fight each claim. Greenberg was quoted as follows:

> "Most catastrophes, like a hurricane or an earthquake, are limited by geography or time," Greenberg said. "Pandemic is very different. You can imagine it hits all insurers, or a large majority, for a loss all at once. It has no geographic bounds, it has no time limit"… Disasters such as a fire, tornado, flood or a hurricane that cause physical losses to property would trigger business interruption coverage, he explained. Pandemics, unlike other catastrophes, are not included in the language for a specific reason, he said. Insurance companies have "finite balance sheets" and potential pandemic losses are "infinite," Greenberg said. "So the only one who could really take the infinite nature, financial nature, of that is the government," he said. "The insurance industry has $800 billion in capital and that's to support all the normal risks we insure, plus the catastrophe events ... we may incur in one year."

https://www.cnbc.com/2020/04/16/chubb-ceo-making-insurers-cover-pandemic-losses-is-unconstitutional.html

53.    The blanket denial of claims is guided not by policy interpretation or its earlier representations to regulators, but by the sheer size of the exposure to THG. THG offered business interruption insurance to its policyholders in full anticipation of the risks it is now facing. Insofar as it finds itself with potentially calamitous under-reserve and capitalization issues as a result of too many claims it failed to

anticipate, the risk of under-pricing its business interruption insurance is not and should not be on THG's policyholders.

## CLASS ACTION ALLEGATIONS

54.     The class claims all derive directly from a single course of conduct by Defendants: their systematic and uniform refusal to pay insureds for losses suffered due to the Order and the related actions to suspend business operations.

55.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

56.     Plaintiff seeks to represent classes defined as:

a)     All persons and entities with insured property located in the State of Michigan with Business Income coverage under a property insurance policy issued by Defendants that suffered a suspension of business as a non-essential business, and for which Defendants have denied a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses ("the Business Income Coverage Class").

b)     All persons and entities with insured property located in the State of Michigan with Civil Authority coverage under a property insurance policy issued by Defendants that suffered loss of Business Income caused by the Order, and for which Defendants have denied a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses ("the Civil Authority Coverage Class").

c)      All persons and entities with insured property located in the State of Michigan with Extended Expense coverage under a property insurance policy issued by Defendants that that suffered loss of Business Income caused by the Order, and for which Defendants have denied a claim for the expenses or have otherwise failed to acknowledge, accept as a covered expense, or pay for the covered expenses ("the Extended Expense Coverage Class").

57.     Excluded from each defined proposed Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

58.     Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

59.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity and Ascertainability**

60.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, hundreds of members of each proposed Class.

61. The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendants' or their agents' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

### Predominance of Common Issues

62. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact which predominate over any questions affecting only individual Class members. Defendants issued all-risk policies to all the members of each proposed Class in exchange for payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

a) Whether Plaintiff and the Class members suffered a covered loss under the policies issued to members of the Class;

b) Whether Defendants' Business Income coverage applies to a suspension of business caused by the Order;

c) Whether Defendants' Civil Authority coverage applies to a loss of Business Income caused by the Order;

d) Whether Defendants' Extended Expense coverage applies to a loss of Business Income caused by the Order;

e) Whether Defendants have breached their contracts of insurance through a uniform and blanket denial of all claims for business losses;

f) Whether Defendants are entitled to raise the "virus exclusion" in light of the claims and their prior misrepresentations;

g) Whether the "virus exclusion" is applicable, or is void;

h) Whether Plaintiff and the Class members suffered damages as a result of Defendants' actions; and

i) Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

**Typicality**

63. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class members and arise from the same course of conduct by Defendants. Plaintiff and the other Class members are all similarly affected by Defendants' refusal to pay under their property insurance policies. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged. The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

**Adequacy of Representation**

64. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex class action and insurance coverage litigation.

65.   Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor its counsel has interests adverse to those of the Class members.

### Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests

66.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiff seeks class-wide adjudication as to the interpretation and scope of Defendants' property insurance policies. The prosecution of separate actions by individual members of the proposed Classes would create an imminent risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

### Final Injunctive and/or Corresponding Declaratory Relief With Respect to the Class is Appropriate

67.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class members. The class claims all derive directly from Defendants' systematic and uniform refusal to pay insureds for losses. Defendants' actions or refusal to act are grounded upon the same generally applicable legal theories.

### Superiority

68.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct and the interpretation of the common language in their property insurance policies predominate over any questions affecting only individual Class members.

69.     Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

70.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges

of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

71.     Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify statewide classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

**CAUSES OF ACTION**
**COUNT I: DECLARATORY JUDGMENT**
**(On behalf of the Business Income Coverage Class)**

72.     Plaintiff re-adopts and re-alleges paragraphs 1 through 58 above.

73.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Coverage Class.

74.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

75.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

76.     In the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations.

77.     The Order caused direct physical loss of and damage to Stanford and other Class members' premises, resulting in suspensions of business operations at these premises. These suspensions have caused Plaintiff and Class members to suffer losses of business income.

78.     These suspensions and losses triggered business income coverage under the Policy and other Class members' policies.

79.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

80.     Defendants dispute that the Policy and other Class members' policies provide coverage for these losses.

81.     Plaintiff seeks a Declaratory Judgment that its Policy and other Class members' policies provide coverage for the losses of business income.

82.     An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Defendants' obligations to reimburse Plaintiff and other Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' losses of business income.

## COUNT II: BREACH OF CONTRACT
### (On behalf of the Business Income Coverage Class)

83.     Plaintiff re-adopts and re-alleges paragraphs 1 through 58 above.

84.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Coverage Class.

85.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

86.     In the Policy, Defendants promised to pay for losses of business income incurred as a result of risk not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations.

87.    The Order caused direct physical loss of and damage to Stanford and other Class members' premises, resulting in suspensions of business operations at these premises.  These suspensions have caused Class members to suffer losses of business income.

88.    These suspensions and losses triggered business income coverage under the Policy and other Class members' policies.

89.    Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

90.    Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

91.    As a result of Defendants' breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of the Policy and other  Class Members' policies and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT III: DECLARATORY JUDGMENT
### (On behalf of the Extended Expense Coverage Class)

92.     Plaintiff re-adopts and re-alleges paragraphs 1 through 58 above.

93.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Coverage Class.

94.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

95.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

96.     Specifically, Defendants promised to pay for Extended Expenses incurred by Plaintiff and other Class members that the insureds would not have incurred if there had been no loss or damage to the insured premises.

97.     The Order caused direct physical loss of and damage to Stanford and other Class members' insured premises, resulting in suspensions of business operations at these premises.  As a result, Plaintiff and other Class members have incurred Extended Expenses.

98.     These Expenses triggered Extended Expense coverage under the Policy and other Class members' policies.

99.    Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

100.    Defendants, without justification, dispute that the Policy and other Class members' policies provide coverage for these Extended Expenses.

101.    Plaintiff, individually and on behalf of the other members of the Extended Expense Coverage Class, seeks a Declaratory Judgment that its Policy, and those of other members of the Extended Expense Coverage Class, provides coverage for these Extended Expenses.

102.    An actual case or controversy exists regarding Class members' rights and Defendants' obligations under Class members' policies to reimburse Class members' for these Extra Expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' Extra Expenses.

## COUNT IV: BREACH OF CONTRACT
### (On behalf of the Extended Expense Coverage Class)

103.    Plaintiff re-adopts and re-alleges paragraphs 1 through 58 above.

104.    Plaintiff brings this Count individually and on behalf of the other members of the Business Income Coverage Class.

105.   Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

106.   Specifically, Defendants promised to pay for Extended Expenses incurred by Plaintiff and other Class members.  These Extended Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

107.   The Order caused direct physical loss of and damage to Stanford and other Class members' insured premises, resulting in suspensions of business operations at these premises.  These suspensions have caused Class members to incur Extended Expenses.

108.   These Expenses triggered Extended Expense coverage under the Policy and other Class members' policies.

109.   Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

110.   Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these Extended Expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

111.   As a result of Defendants' breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT V: DECLARATORY JUDGMENT
### (On behalf of the Civil Authority Coverage Class)

112.   Plaintiff re-adopts and re-alleges paragraphs 1 through 58 above.

113.   Plaintiff brings this Count individually and on behalf of the other members of the Business Income Coverage Class.

114.   Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

115.   Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

116.   In the Policy and other Class members' policies, Defendants promised to pay for losses of business income sustained and extended expenses incurred when,

among other things, a Covered Cause of Loss causes damage to property near the insured premises, and the civil authority prohibits access to property near the insured premises.

117.  Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of the Order that prohibited access to insured premises under the Policy and Class members' policies.

118.  These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Class members' policies.

119.  Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

120.  Defendants, without justification, dispute that the Policy provides coverage for these losses.

121.  Plaintiff seeks a Declaratory Judgment that its Policy and other Class members' policies provide coverage for the losses that Class members have sustained and extra expenses they have incurred caused by actions of civil authorities.

122.  An actual case or controversy exists regarding Class members' rights and Defendants' obligations under Class members' policies to reimburse Class members for these losses and extra expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, requests that this Court enter a Declaratory Judgment declaring that the Policy provides Civil Authority coverage for the losses and extra expenses incurred by Plaintiff and the other Class members.

## COUNT VI: BREACH OF CONTRACT
### (On behalf of the Civil Authority Coverage Class)

123.   Plaintiff re-adopts and re-alleges paragraphs 1 through 58 above.

124.   Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

125.   Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses and expenses covered by the Policy.

126.   In the Policy and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when the civil authority prohibits access to property near the insured premises.

127.   Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

128.   These losses satisfied all requirements to trigger Civil Authority

coverage under the Policy and other Class members' policies.

129.   Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

130.   Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

131.   As a result of Defendants' breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class members' policies, and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, as follows:

A.   Entering an order certifying the proposed statewide Classes, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the classes;

B.   Entering declaratory judgments on Counts I, III, and V in favor of

Plaintiff and the members of the Business Income Coverage Class, Civil Authority Coverage Class, and Extended Expense Coverage Class as follows:

     i.   Business Income, Civil Authority and Extended Expense losses and expenses incurred and sustained as a result of the Order are insured and covered losses and expenses under Plaintiff's and Class members' policies; and

    ii.   Defendants Citizens and THG are obligated to pay for the full amount of the Business Income, Civil Authority and Extra Expense losses and expenses sustained and incurred, and to be sustained and incurred, as a result of the Order are insured and covered losses and expenses under Plaintiff and Class members' policies;

   iii.   The "virus exclusion" (if raised as a defense) is not applicable to these claims and/or is void.

C.   Entering judgments on counts II, IV, and VI in favor of Plaintiff and the members of the Business Income Coverage Class, Civil Authority Coverage Class, and Extended Expense Coverage Class; and awarding damages for breach of contract in an amount to be determined at trial;

D.   An order requiring Defendants to pay both pre- and post-judgment

interest on any amounts awarded;

E.      An award of costs and attorneys' fees; and

F.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Dated: May 29, 2020

Respectfully submitted,

*s/ Andrew Kochanowski*
Andrew Kochanowski
Jason J. Thompson
Robert B. Sickels
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI  48076
248-355-0300
akochanowski@sommerspc.com
jthompson@sommerspc.com
rsickels@sommerspc.com

Kenneth F. Neuman
Jennifer M. Grieco
Stephen T. McKenney
ALTIOR LAW
401 S. Old Woodward, Suite 460
Birmingham, MI 48009
(248) 594-5252
kneuman@altiorlaw.com
jgrieco@altiorlaw.com
smckenney@altiorlaw.com

*Attorneys for Plaintiffs*