## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STANFORD DENTAL, PLLC,

      Plaintiff,

v.

THE HANOVER INSURANCE
GROUP, INC. and CITIZENS
INSURANCE COMPANY OF
AMERICA,

      Defendants.

Case No.: 4:20-cv-11384-MFL-DRG

Judge Matthew F. Leitman

Magistrate Judge David R. Grand

Putative Class Action

**ORAL ARGUMENT REQUESTED**

---

## DEFENDANTS THE HANOVER INSURANCE GROUP, INC.'S AND CITIZENS INSURANCE COMPANY OF AMERICA'S MOTION TO DISMISS

For the reasons stated more fully in the accompanying Brief in Support, Defendants The Hanover Insurance Group, Inc. and Citizens Insurance Company of America move to dismiss Plaintiff's Complaint. As to Defendant The Hanover Insurance Group, Inc., the Complaint fails for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1), as this Defendant never issued an insurance policy to Plaintiff. As to both Defendants, the Complaint fails to state a claim under Rule 12(b)(6).

1

In accordance with Local Rule 7.1, counsel for Defendants sought concurrence in the relief requested on July 21, 2020. Concurrence was denied, necessitating the presentation of this Motion.

Dated: July 22, 2020

By: /s/ *Lori McAllister*

Lori McAllister (P39501)
Theodore W. Seitz (P60320)
Kyle M. Asher (P80359)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, Michigan 48933
Telephone: (517) 374-9150
lmcallister@dykema.com

*Attorneys for Defendants*

010767.000075  4848-7928-2883.1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STANFORD DENTAL, PLLC,

       Plaintiff,

       Case No.: 4:20-cv-11384-MFL-DRG

v.

       Judge Matthew F. Leitman

THE HANOVER INSURANCE
GROUP, INC. and CITIZENS
INSURANCE COMPANY OF
AMERICA,

       Magistrate Judge David R. Grand

       Putative Class Action

       Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

CONCISE STATEMENT OF THE ISSUES PRESENTED.................................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE
RELIEF SOUGHT .................................................................................. vii

INTRODUCTION ................................................................................... 1

BACKGROUND ..................................................................................... 4

I.     The Governor Implements Michigan's "Stay At Home" Order .................... 4

II.    Plaintiff's Dental Practice Allegedly Shuts Down in Response to the
       Governor's Order.............................................................................. 5

III.   After Plaintiff's Claim for Coverage Is Denied, Plaintiff Files This
       Lawsuit.......................................................................................... 6

IV.    The Insurance Policy ......................................................................... 6

       A.     The Policy's Coverage Provisions ........................................... 6

       B.     The Policy's Exclusions ....................................................... 8

LEGAL STANDARD................................................................................ 9

ARGUMENT ......................................................................................... 10

I.     Plaintiff Lacks Standing to Sue Hanover ................................................ 10

II.    Plaintiff Has Pleaded Itself Out of a Business Income Claim...................... 11

       A.     Plaintiff Has Not Alleged Facts Supporting "Direct Physical Loss of or
              Damage to" Covered Property as Interpreted Under Michigan Law..12

       B.     Any Alleged Damage to Plaintiff's Property Was Not Caused By or
              Resulting From a Covered Cause of Loss.......................................... 15

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

i

III.    Because Plaintiff is Not Entitled to Business Income Coverage, it is Likewise
        Not Entitled to Extended Business Income Coverage...................................17

IV.     Plaintiff Is Not Entitled to Civil Authority Coverage ...................................17

        A.      Plaintiff Has Failed to Allege That a "Covered Cause of Loss Cause[d]
                Damage to Property Other than Property at the Described
                Premises"...........................................................................................17

        B.      Access to Plaintiff's Property Was Not Prohibited Due to Direct
                Physical Loss or Damage to Property Within One Mile of the
                Property ..............................................................................................18

                1.      Access to Plaintiff's Property Was Not Prohibited .................18

                2.      The Limitation on Plaintiff's Business Operations Was Not
                        Caused by Damage to Adjacent Property .................................20

V.      The Policy's Exclusions Bar Coverage ........................................................21

        A.      The Virus Exclusion Bars Coverage ...................................................21

        B.      The Policy's Acts or Decisions Exclusion Bars Coverage .................24

        CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
308 F. Supp. 2d 331 (S.D.N.Y. 2004) ................................................................. 20

*Ackman v. N. States Contracting Co.*,
110 F.2d 774 (6th Cir. 1940) ................................................................................ 4

*Am. BioCare Inc. v. Howard & Howard Attys, PLLC*,
702 F. App'x 416 (6th Cir. 2017) .......................................................................... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 9, 12

*Asian Food Serv., Inc. v. Travelers Cas. Ins. Co. of Am.*,
2020 U.S. Dist. LEXIS 91180 (E.D. Mich. May 26, 2020) ................................ 13

*Bassett v. Nat'l Collegiate Athl. Ass'n*,
528 F.3d 426 (6th Cir. 2008) ............................................................................ 4, 6

*Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*,
108 F. Supp. 3d 543 (E.D. Mich. 2015) ....................................................... 15, 16

*Class Laundry & Linen Corp. v. Travelers Ins. Co. of Am.*,
No. 16-cv-5440, 2017 U.S. Dist. LEXIS 222057 (S.D.N.Y. June 30, 2017) ...... 13

*Creelgroup, Inc. v. NGS Am., Inc.*,
518 F. App'x 343 (6th Cir. 2013) .......................................................................... 6

*DLX, Inc. v. Kentucky*,
381 F.3d 511 (6th Cir. 2004) ................................................................................ 9

*Fountainbleau 2006, LLC v. United States Fire Ins. Co.*,
No. 1:09-cv-1702-WSD, 2010 U.S. Dist. LEXIS 154454
(N.D. Ga. Dec. 20, 2010) ................................................................................... 13

*Gavrilides Management Company et al. vs. Mich. Ins. Co.,*
Case No. 20-258-CB-C30 (Ingham County) ......................................... 13, 14, 21

*Holland v. J.P. Morgan Chase Bank, N.A.*,
No. 19 Civ. 00233, 2019 U.S. Dist. LEXIS 146553
(S.D.N.Y. Aug. 28, 2019) ................................................................................... 10

*In re: COVID-19 Business Interruption Protection Ins. Litig.*,
Case No. 2942 (J.P.M.L.) ..................................................................................... 1

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

*Lakeland Asphalt Corp. v. Westfield Ins. Co.*,
   2012 U.S. Dist. LEXIS 12764 (W.D. Mich. Feb. 2, 2012)...................................22

*Legal Servs. Plan of E. Mich. v. Citizens Ins. Co. of Am.*,
   No. 278110, 2009 Mich. App. LEXIS 9549 (Mich. Ct. App. Apr. 30, 2009) .....24

*Lewis v. Casey*,
   518 U.S. 343 (1996) ............................................................................................10

*Mastellone v. Lightning Rod Mut. Ins. Co.*,
   884 N.E.2d 1130 (Ohio Ct. App. 2008) ..............................................................14

*McDonald v. Farm Bureau Ins. Co.*,
   747 N.W.2d 811 (Mich. 2008) ............................................................................24

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ..............................................................................................3

*Perry v. Allstate Indem. Co.*,
   953 F.3d 417 (6th Cir. 2020) ....................................................................... 10, 11

*Phila Parking Auth. v. Fed. Ins. Co.*,
   385 F. Supp. 2d 280 (S.D.N.Y. 2005)..................................................................13

*Rory v. Cont'l Ins. Co.*,
   703 N.W.2d 23 (Mich. 2005) ..............................................................................23

*S. Hospitality, Inc. v. Zurich Am. Ins. Co.*,
   393 F.3d 1137 (10th Cir. 2004)...........................................................................19

*Se. Mental Health Ctr., Inc. v. Pac. Ins. Co.*,
   439 F. Supp. 2d 831 (W.D. Tenn. 2006)..............................................................13

*SEC v. Jorissen*,
   470 F. Supp. 2d 764 (E.D. Mich. 2007) ..............................................................22

*Shain v. Advanced Techs. Grp., LLC*,
   No. 16-10367, 2017 U.S. Dist. LEXIS 27438 (E.D. Mich. Feb. 28, 2017).........11

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
   No. 3:09-cv-02391, 2010 U.S. Dist. LEXIS 67092 (M.D. Pa. July 6, 2010) ......19

*Sloan v. Phoenix of Hartford Ins. Co.*,
   207 N.W.2d 434 (Mich. Ct. App. 1973)...............................................................19

*Social Life Magazine, Inc. v. Sentinel Ins. Co.*,
   Case No. 20 Civ. 3311 (S.D.N.Y. May 14, 2020)................................................20

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

*TMC Stores, Inc. v. Federated Mut. Ins.
  Co.*, No. A04-1963, 2005 Minn. App. LEXIS 585
  (Minn. Ct. App. June 7, 2005) ........................................................................ 18, 19

*Torres Hillsdale Country Cheese, L.L.C. v. Auto-Owners Ins. Co.*,
  No. 308824, 2013 Mich. App. LEXIS 1547
  (Mich. Ct. App. Oct. 1, 2013) ............................................................................... 25

*Universal Image Prods., Inc. v. Fed. Ins. Co.*,
  475 F. App'x 569 (6th Cir. 2012) ................................................................. 13, 14

*Waskul v. Washtenaw Cty. Cmty. Mental Health*,
  900 F.3d 250 (6th Cir. 2018) ................................................................................. 10

**Statutes**

Mich. Comp. Laws § 500.2236 ................................................................................. 23

Mich. Comp. Laws § 500.244(1) ............................................................................. 23

**Rules**

Rule 12(b)(6) ................................................................................................................ 9

**Constitutional Provisions**

U.S. Cont. art. III ................................................................................................ 10, 11

**Other Authorities**

10 COUCH ON INS. § 148:46 ...................................................................................... 14

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

1. Does Plaintiff lack standing to sue The Hanover Insurance Group, Inc. ("Hanover") for alleged damages arising out of the denial of insurance coverage when Hanover was not a party to the insurance policy, and otherwise had no involvement in the facts alleged by Plaintiff?

   Hanover Answers: Yes.

2. Is Plaintiff entitled to Business Income or Extended Business Income coverage under the insurance policy when Plaintiff has not alleged that it suffered tangible, non-economic damage to its property as a result of a covered cause of loss?

   Defendants Answer: No.

3. Is Plaintiff entitled to Civil Authority coverage under the insurance policy when Plaintiff has not alleged that its losses were "caused by civil authority that prohibits access to the described premises due to direct physical loss or damage to property within one mile of the described premises."

   Defendants Answer: No

4. Are Plaintiff's claims barred by the insurance policy's virus exclusion, which provides that Citizens "will not pay for loss or damage caused directly or indirectly by . . . Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease," whether or not "any other cause or event that contributes concurrently or in any sequence to the loss."

   Defendants Answer: Yes.

5. By attempting to plead around the virus exclusion, and argue that the Governor's Executive Order was the sole cause of its damages, did Plaintiff plead directly into the policy's Acts or Decisions exclusion, which excludes from coverage "loss or damage caused by or resulting from . . . Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body"?

   Defendants Answer: Yes.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

# CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT[1]

In support of their Motion to Dismiss, Defendants rely on the following authority, as well as the authority cited in the Brief in Support of Motion to Dismiss:

- The plain text of the insurance policy that binds Plaintiff and Citizens Insurance Company of America.

- The plain text of Governor Whitmer's Executive Order No. 2020-21.

- *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice.").

- *Asian Food Serv., Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 U.S. Dist. LEXIS 91180, at *13 (E.D. Mich. May 26, 2020) ("The Sixth Circuit, applying Michigan law, has found that this language—'direct physical loss or damage'—encompasses tangible, physical losses, not economic losses.").

- *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 108 F. Supp. 3d 543, 563 (E.D. Mich. 2015) (interpreting causation requirement for Business Income claims).

- *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 420 (6th Cir. 2020) (when an insured sues entities who "are not parties to the policy at issue," the insured "lacks standing to pursue [its] claims against those entities because [the] injury is not traceable to them").

- *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 34 (Mich. 2005) (under Michigan law, courts should not second-guess the policy behind an insurance policy's exclusions or coverage provisions).

- *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-cv-02391, 2010 U.S. Dist. LEXIS 67092, at *9-10 (M.D. Pa. July 6, 2010); *S. Hospitality, Inc. v.*

---

[1] Defendants' courtesy copy will include a binder containing highlighted "copies of the main cases and other authority that supports its legal position(s)." *See* Practice Guidelines for Judge Matthew F. Leitman.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

*Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140-41 (10th Cir. 2004) (interpreting Civil Authority coverage requirements).

- *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) (interpreting "direct physical loss or damage requirement under Michigan law).

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## INTRODUCTION

Across the country, insurance companies are being flooded with business interruption claims arising out of the COVID-19 pandemic.  Well over 100 lawsuits have been filed in federal court alone.  *See In re: COVID-19 Business Interruption Protection Ins. Litig.*, Case No. 2942 (J.P.M.L.)  To obtain business interruption coverage under a property insurance policy, the policyholder must generally show "direct physical loss of or damage to" covered property caused by a "covered cause of loss."  Thus, in most attempts to trigger coverage, the policyholders have first alleged that the presence of the SARS-CoV-2 virus ("COVID-19") causes "physical loss of or damage to" their property.  Many lawsuits then allege that the virus is a "covered cause of loss" because the policies at issue in those cases do "not include, and [are] not subject to, any exclusion for losses caused by viruses or communicable diseases."[2]

This case is different from those other cases in two respects.  Here, Plaintiff does not plead that a virus caused any direct physical loss of or damage to its property.  Indeed, it affirmatively pleads that the virus was not on its property.  (Compl. ¶¶ 6, 8.)  Without direct physical damage, Plaintiff's claim is doomed.  But

---

[2] *See, e.g.*, *Caribe Rest. & Night Club v. Topa Ins. Co.*, No. 2:20-cv-03570 (C.D. Cal.) (Compl. ¶ 7); *Bridal Expressions LLC v. Owners Ins. Co.*, No. 1:20-cv-833 (N.D. Ohio) (Compl. ¶ 5) (same allegation); *Dakota Ventures, LLC v. Oregon Mut. Ins. Co.*, No. 3:20-cv-00630-HZ (D. Or.) (Compl. ¶ 9) (same); *Berkseth-Rojas DDS v. Aspen Am. Ins. Co.*, No. 3:20-cv-00948-D (N.D. Tex.) (Compl. ¶ 7) (same).

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

even if Plaintiff could identify some physical loss or damage, this action is still subject to dismissal because, unlike the claimants in other cases, Plaintiff's insurance policy contains a virus exclusion. The policy expressly excludes all losses or damages that are caused "directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease," whether or not "any other cause or event . . . contributes concurrently or in any sequence to the loss."

Recognizing that it must satisfy the physical damage requirement without running afoul of the virus exclusion, Plaintiff pleads that the SARS-CoV-2 virus had nothing to do with its damages. Instead, Plaintiff contends that Governor Whitmer's March 24, 2020 Executive Order "was the sole, direct and only proximate cause of the business losses suffered" by Plaintiff.

But that contention makes no sense.[3] The Executive Order cannot be separated from the SARS-Cov-2 virus, which causes the disease known as COVID-19, because the Executive Order was issued "[t]o suppress the spread of COVID-19." (*See* **Ex. 1**, Exec. Order 2020-21.) But for the virus, there would have been no

---

[3] And regardless, by attempting to plead around the virus exclusion, Plaintiff has pleaded straight into the policy's other exclusions, which provide that Citizens "will not pay for loss or damage caused by or resulting from . . . Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." (Policy § B.3(b).)

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

Executive Order and the alleged "damage" to Plaintiff's property would not exist.

However, the Court need not decide whether the virus or the Executive Order was the sole proximate cause of Plaintiff's alleged damages because the virus exclusion does not depend on the virus being the proximate cause.  The virus exclusion applies if the virus directly or indirectly causes the alleged damage, even if "any other cause or event . . . contribute[d] concurrently or in any sequence to the loss."  The same is true for coverage under the Extended Business Income and Civil Authority provisions of the policy – there was no direct physical loss of or damage to property and the alleged damages are subject to the virus exclusion.[4]

Finally, with regard to the claims against The Hanover Insurance Group, Inc. ("Hanover"), the action should be dismissed for lack of standing because Hanover did not issue the subject insurance policy to Plaintiff, and it had no other involvement in any of the facts alleged by Plaintiff.

---

[4] Because Plaintiff's individual claims are subject to dismissal, so too are all of the claims brought on behalf of putative class members.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").  If Plaintiff's individual claims survive Defendants' motion to dismiss, however, Defendants reserve the right to challenge the class claims as well, whether through a motion to strike class allegations under Rule 12(f), or otherwise.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## BACKGROUND

### I.    The Governor Implements Michigan's "Stay at Home" Order.

On March 24, 2020, Governor Whitmer issued Executive Order No. 2020-21 to "suppress the spread of COVID-19."  Among other things, this Order required "all individuals currently living within the State of Michigan . . . to stay at home or at their place of residence," and provided that "[n]o person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations." (*See* **Ex. 1**,[5] EO 2020-21, ¶¶ 2, 4.)

Notably, the Order defined "workers who are necessary to conduct basic operations" to include "those whose in-person presence is strictly necessary to allow the business or operation to maintain the value of inventory and equipment . . . ." (*Id.* ¶ 4(b).)  In addition, the Order's "Exceptions" expressly allowed individuals to leave their homes "to seek medical or dental care that is necessary to address a medical emergency."  (*Id.* ¶ 7(a)(5).)  In other words, dental care could be provided in the case of a medical emergency, and employees could go to their workplace to perform work that "maintain[s] the value of inventory equipment."  (*See id.*)

_____

[5] This Court may consider the contents of the Executive Order because it is a public document bearing the Governor's seal, and because it is referenced in and central to Plaintiff's Complaint.  *Ackman v. N. States Contracting Co.*, 110 F.2d 774, 777 (6th Cir. 1940) ("We take judicial notice of executive orders . . ."); *Bassett v. Nat'l Collegiate Athl. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## II. **Plaintiff's Dental Practice Allegedly Shuts Down in Response to the Governor's Order.**

Plaintiff Stanford Dental PLLC "is the owner and operator of a dental practice" in Livonia, Michigan that "provides general dentistry to the public." (Compl. ¶ 11.) Plaintiff alleges that, when Executive Order 2020-21 went into effect, Plaintiff was "barred . . . from operating his business at the insured premises." (Compl. ¶ 28.)[6] Stemming from this "bar," Plaintiff alleges that it suffered damages such as "decayed or expired" property, depreciation and lost value in assets due to non-use of property, and "other forms of damage and/or loss" while its dental practice was closed. (Compl. ¶¶ 5, 31.) In addition, Plaintiff states it will have to make "structural alterations to the premises to comply with State-imposed requirements for resumption of business activity." (*Id.* ¶ 32.)

Plaintiff goes to great lengths to disassociate any harm from the COVID-19 pandemic itself. Plaintiff states that the Governor's Order "is the sole cause" of Plaintiff's damages, and that its damages "occurred in the *absence* of virus contamination." (*Id.* ¶¶ 36, 43.) Plaintiff further contends that "[t]he March 24, 2020 Order was the sole, direct and only proximate cause of the business losses," that "[t]he Covid-19 virus was not the direct cause of the property damage at issue,"

---

[6] As discussed below, well-pleaded factual allegations are to be taken as true at this stage, but legal conclusions are not. Here, for example, the Court need not credit Plaintiff's allegations concerning the impact of the Executive Order.

5

and that "there is no evidence at all that the virus did enter Plaintiff's property or that it had to be de-contaminated." (*Id.* ¶¶ 6, 8.)

## III.   **After Plaintiff's Claim for Coverage Is Denied, Plaintiff Files This Lawsuit.**

Attempting to recover these damages, Plaintiff alleges that it "provided notice of its losses and expenses to Defendants" by way of an insurance claim, and that Defendants denied the claim.  (Compl. ¶¶ 36-38.)  Plaintiff then filed this lawsuit, pointing to three provisions of the Policy in support of its argument for coverage: the Policy's "Business Income," "Extended Business Income," and "Civil Authority" coverages. (*Id.* ¶¶ 16-18.)

## IV.   **The Insurance Policy**

### A.     **The Policy's Coverage Provisions.**

As Plaintiff's Complaint acknowledges, coverage under the Policy is triggered by "direct physical loss of or damage to Covered Property."  (Policy § I.A., ECF No. 1-2, PageID.52.[7])  The Policy's "Coverage" section states:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(*Id.*)  "Covered Causes of Loss" are defined as "Risks of direct physical loss unless

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

---

[7] This Court may consider the terms of the Policy attached to Plaintiff's Complaint. *See Bassett*, 528 F.3d at 430.  To the extent the Policy's terms conflict with the Complaint's allegations, the Policy's terms control.  *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013).

the loss is: a. Excluded in Section I – PROPERTY, B. Exclusions; or b. Limited in

Section I- PROPERTY, A. Coverages, 4. Limitations." (*Id.* § I.A.3, PageID.54.)

The "Additional Coverages" section of the Policy provides, as relevant:

**f. Business Income:** . . . .

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to a described premises shown in the Declarations . . . The loss or damage must be caused by or result from a Covered Cause of Loss . . .

**(2) Extended Business Income**

If no Business Income Coverage is provided under this Coverage Form, then there is no Extended Business Income Coverage afforded under this Coverage Form. . . . .

**i. Civil Authority**

When Business Income Coverage is provided under this Coverage Form:

**(1)** When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss or damage to property within one mile of the described premises, provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property;

7

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property. . . .

(Policy, § A.5(f), (i), PageID.58-59, 61.)

### B. The Policy's Exclusions.

The definition of "Covered Cause of Loss" refers to "Exclusions" which, under Michigan law, only come into play if the Court finds that coverage exists. As relevant to this case, the Policy contains the following Exclusions:

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### i. Virus or Bacteria

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. **(2)** However, the exclusion in paragraph (1) above, does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot . . . **(3)** With respect to any loss or damage subject to the exclusion in paragraph (1) above, such exclusion supersedes any exclusion relating to "pollutants." . . . .

**3.** We will not pay for loss or damage caused by or resulting from paragraphs a., b., and c. below. But if an excluded cause of loss that is listed in paragraphs a., b., and c. below, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss. . . .

**b. Acts or Decisions**. Acts or decisions, including the

8

> failure to act or decide, of any person, group, organization
> or governmental body.

(Policy, §§ B.1(i), B.3(b), PageID.88-93.[8])

## LEGAL STANDARD

Defendants' arguments to dismiss the claims against Hanover for lack of standing implicate this Court's subject matter jurisdiction and are "properly decided under [Federal Rule of Civil Procedure] 12(b)(1)." *Am. BioCare Inc. v. Howard & Howard Attys, PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017). When a Rule 12(b)(1) motion attacks "the claim of jurisdiction on its face"—as this one does—the standard mirrors Rule 12(b)(6). *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

Under Rule 12(b)(6)—which also applies to Defendants' remaining arguments for dismissal—a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Two "working principles" underlie the Rule's pleading requirements. *Id.* "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

---

[8] Defendants reserve the right to raise the applicability of other exclusions after the discovery period has closed in the event this Motion is denied.

9

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## ARGUMENT

### I.    Plaintiff Lacks Standing to Sue Hanover.

As a threshold matter, all claims raised against Hanover should be dismissed for lack of Article III standing because Plaintiff has alleged no facts implicating Hanover in any alleged wrongdoing. "[S]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). It is assessed on a claim-by-claim basis. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018). And it is assessed on a party-by-party basis. *Lewis*, 518 U.S. at 357.  Put simply, a "plaintiff proceeding against multiple defendants must establish standing as to each defendant and each claim." *Holland v. J.P. Morgan Chase Bank, N.A.*, No. 19 Civ. 00233, 2019 U.S. Dist. LEXIS 146553, at *14 (S.D.N.Y. Aug. 28, 2019).

Plaintiff has not done so.  This case centers on the alleged breach of an insurance policy that Plaintiff concedes was issued solely by Citizens, and to which Hanover was not a party.  (Compl. ¶ 12; Policy, ECF No. 1-2.)  When an insured sues entities who "are not parties to the policy at issue," the insured "lacks standing to pursue [its] claims against those entities because [the] injury is not traceable to them."  *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 420 (6th Cir. 2020).

Moreover, to the extent Plaintiff attempts to gain standing against Hanover by arguing that Hanover has issued insurance policies to unnamed class members (*see* Compl. ¶ 13), that allegation is both factually inaccurate and legally irrelevant.

10

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

Factually, as Michigan's Department of Insurance and Financial Services ("DIFS") records make clear, Hanover does not sell insurance policies in Michigan.[9]  And legally, even if it did, Article III standing "works the other way around.  Potential class representatives must demonstrate individual standing vis-à-vis the defendant; they cannot acquire such standing merely by virtue of bringing a class action.  As [Stanford Dental] is the only named plaintiff in the action, no other named plaintiffs exist to create standing against the remaining . . . entities." *Perry*, 953 F.3d at 420.

Because any injury suffered by Plaintiff is not traceable to Hanover, all claims against Hanover should be dismissed for lack of Article III standing.

## II.     Plaintiff Has Pleaded Itself Out of a Business Income Claim.

As to the merits of Plaintiff's claims, Counts I and II of the Complaint seek declaratory relief and damages for breach of contract arising out of the denial of Plaintiff's claim for Business Income coverage.  To obtain Business Income coverage under the Policy, Plaintiff must have sustained: (1) a "necessary suspension" of its operations "caused by direct physical loss of or damage to" covered property, and (2) the direct physical loss of or damage to covered property

---

[9] *See* **Ex. 2**, showing that Hanover is not a licensed insurance company in Michigan. This exhibit—a screen capture of DIFS' website—may be considered at this stage because "a court can take judicial notice of public records and government documents available from reliable sources on the internet such as websites run by governmental agencies." *Shain v. Advanced Techs. Grp., LLC*, No. 16-10367, 2017 U.S. Dist. LEXIS 27438, at *4 n.2 (E.D. Mich. Feb. 28, 2017).

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

must itself have been "caused by or resulted from a Covered Cause of Loss." (Policy, § A.5(f).)  Plaintiff fails at each step.

## A. Plaintiff Has Not Alleged Facts Supporting "Direct Physical Loss of or Damage to" Covered Property as Interpreted Under Michigan Law.

To begin, Plaintiff's Business Income claim should be dismissed because Plaintiff has not alleged facts supporting "direct physical loss of or damage to" Covered Property, as the Policy requires.  Alleging otherwise, Plaintiff's Complaint makes the conclusory statement that "[b]oth the text of the Policy and case law have interpreted 'damage' or 'loss' as (1) a diminution in value, (2) financial detriment, (3) curtailment of right to full ownership, (4) an undesirable outcome of a risk, or (5) an actual change in insured property causing it to become unsatisfactory for future use." (Compl. ¶ 5.)  Plaintiff further alleges damages including "lost value as a result of the passage of time," and that its assets are "depreciating" and have lost use and functionality while Plaintiff's dental practice was closed.  (Compl. ¶¶ 5, 31.)

It is unclear what "text of the Policy and case law" Plaintiff is referring to, and this Court need not accept Plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 678.[10]  That is particularly so when this Court's case law states exactly the

---

[10] By listing what qualifies as "damage" or "loss" in the unidentified "text of the Policy and case law," it appears that Plaintiff may be trying to isolate these words, rather than to read the "direct physical loss of or damage" phrase as a whole.  As many courts have recognized however, the word "physical" modifies both "loss" and "damage."  *See Class Laundry & Linen Corp. v. Travelers Ins. Co. of Am.*, No.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

opposite. Just last month, this Court addressed similar policy language, which "state[d] that Defendant will pay for 'direct physical loss of or damage' to covered property caused by or resulting from a covered cause of loss." *Asian Food Serv., Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 U.S. Dist. LEXIS 91180, at *13 (E.D. Mich. May 26, 2020) (Edmunds, J.). In rejecting a business income claim, the Court rightly recognized that "[**t]he Sixth Circuit, applying Michigan law, has found that this language—'direct physical loss or damage'—encompasses tangible, physical losses, not economic losses**." *Id.* at *13-14 (citing *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012)) (emphasis added). This is consistent with a very recent decision issued by the Ingham County Circuit Court which, in the face of a Complaint much like Plaintiff's, held that direct physical loss or damage to property is not caused by the SARS-CoV-2 virus. *See Gavrilides Management Company et al. vs. Mich. Ins. Co.,* Case No. 20-258-CB-C30 (Ingham County) (Order and Oral Hr'g Tr. at 18-20, attached as **Ex. 3**)

16-cv-5440, 2017 U.S. Dist. LEXIS 222057, at *11 (S.D.N.Y. June 30, 2017) ("'Direct' and 'physical' plainly modify both 'loss' and 'damage'"); *Fountainbleau 2006, LLC v. United States Fire Ins. Co.*, No. 1:09-cv-1702-WSD, 2010 U.S. Dist. LEXIS 154454, at *17 (N.D. Ga. Dec. 20, 2010) ("The Court finds that the plain meaning of 'direct physical loss or damage' indicates that 'direct physical' is intended to modify both 'loss' and 'damage.'"); *Se. Mental Health Ctr., Inc. v. Pac. Ins. Co.*, 439 F. Supp. 2d 831, 837 (W.D. Tenn. 2006) ("Case law construing this exact language in insurance contracts supports the proposition that the words 'direct physical' modify both 'loss of' and 'damage to.'"); *Phila Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (same).

13

(rejecting as "nonsense" claim that direct physical loss of or damage to property occurred when the complaint alleged that at "no time has Covid-19 entered" its premises, and that "it has never been present in either location").

Both the Sixth Circuit's interpretation of Michigan law in *Universal Image*, and the Ingham County Circuit Court's interpretation in *Gavrilides* were consistent with how several other states have interpreted the term.  *See Universal Image*, 475 F. App'x at 573 (collecting cases); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1143-44 (Ohio Ct. App. 2008).  The Sixth Circuit's interpretation is also consistent with a leading insurance treatise, which provides that the "requirement that the loss be 'physical,' . . . is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Universal Image*, 475 F. App'x at 574 (citing 10 COUCH ON INS. § 148:46).

Here, contrary to Michigan law, the damages claimed by Plaintiff are mere economic losses that do not implicate any tangible, structural damage to Plaintiff's property, and therefore do not provide Plaintiff with Business Income coverage. (*See, e.g.*, Compl. ¶¶ 5, 31.)  Because these facts do not rise to the level of "direct physical loss of or damage to" Plaintiff's property, Plaintiff's claim for Business Income coverage must be dismissed.

14

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

**B.    Any Alleged Damage to Plaintiff's Property Was Not Caused By or Resulting From a Covered Cause of Loss.**

The only arguably-tangible damage that Plaintiff alleges is that its products "decayed" or "expired," and that Plaintiff had to make "structural alterations to its property" to comply with Michigan's re-opening requirements.[11] (Compl. ¶¶ 5, 31-32.)  But while alleging tangible, structural damage is necessary to obtain Business Income coverage, it is not sufficient.   "[D]irect physical loss of or damage to" Covered Property must have been "caused by or resulting from any Covered Cause of Loss." (Policy, §§ I.A, I.A.5(f).)

Causation is required, not optional, and was recently examined in detail by this Court.  In *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 108 F. Supp. 3d 543, 563 (E.D. Mich. 2015), the plaintiff's "business income" coverage required the insurer to pay for damage "caused by direct physical loss to property at a premises caused by or resulting from any Covered Cause of Loss." *Id.* at 551.  After a flood damaged the plaintiff's bowling alley, the plaintiff filed a claim for "business personal property that allegedly was lost due to the water event," including "spoiled liquor and beer" that "'went bad' after being unused for too long" while the bowling alley

---

[11] Notably, this allegation runs straight into the Policy's "Ordinance or Law" exclusion, which provides that Citizens is not required to "pay for loss or damage caused directly or indirectly by . . . The enforcement of or compliance with any ordinance or law: (a) Regulating the construction, use or repair of any property[.]" (Policy, § B.1(a), PageID.88.)

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

was being repaired. *Id.* at 563. The court rejected the claim because "none of the liquor and beer that 'went bad' was damaged by water." *Id.* The policy "only cover[ed] against 'direct physical loss *due to an insured risk*, and the property here was not damaged by the water event. The claim for loss of beer and liquor is, essentially, a portion of consequential damages . . . rather than a direct claim for loss due [to] a covered risk." *Id.*

 The same is true here. The Policy requires that Plaintiff's "direct physical loss" (the decayed products or structurally altered property) must have been "caused by or result[ing] from" a Covered Cause of Loss. Just as the spoiled beer in *Bowlers' Alley* was not caused by the Covered Cause of Loss (a flood), the decayed product and structurally altered property here was not caused by any Covered Cause of Loss. To the contrary, Plaintiff alleges that "[t]he March 24, 2020 Order was the sole, direct and only proximate cause of the business losses," while also alleging that the Order was issued "to ensure the absence of the virus," and that "there is no evidence at all that the virus did enter Plaintiff's property or that it had to be de-contaminated." (Compl. ¶¶ 6, 8.) In short, Plaintiff alleges that a government order—which, in Plaintiff's view, is entirely unrelated to a virus or any other physical harm—was the sole cause of Plaintiff's damages. Because Plaintiff has essentially admitted that any damages were not "caused by or resulting from any Covered Cause of Loss," the Business Income claim should be dismissed.

**III.** **Because Plaintiff is Not Entitled to Business Income Coverage, it is Likewise Not Entitled to Extended Business Income Coverage.**

Counts III and IV of the Complaint seek declaratory relief and damages for breach of contract arising out of the denial of Plaintiff's claim for Extended Business Income coverage. As that provision of the Policy makes clear, when there is "no Business Income Coverage," then there is also "no Extended Business Income Coverage afforded[.]" (Policy § A.5(f)(ii).) For the reasons explained above, Plaintiff is not entitled to Business Income coverage and, consequently, it is likewise not entitled to Extended Business Coverage.

**IV.** **Plaintiff Is Not Entitled to Civil Authority Coverage.**

Next, Counts V and VI of the Complaint seek declaratory relief and damages arising out of the denial of Plaintiff's claim for Civil Authority coverage. For Civil Authority coverage to apply: (1) a "Covered Cause of Loss" must "cause[] damage to property other than property at the described premises," and (2) the "action of civil authority" must "prohibit[] access to the described premises due to direct physical loss or damage to property within one mile of the described premises[.]" (Policy, PageID.61.) Neither prong is met.

**A.** **Plaintiff Has Failed to Allege That a "Covered Cause of Loss Cause[d] Damage to Property Other than Property at the Described Premises."**

Plaintiff's claim for Civil Authority coverage first fails because Civil Authority coverage applies only "[w]hen a Covered Cause of Loss causes damage

17

to property other than property at the described premises . . ."

Here, Plaintiff alleges that "[o]ther non-essential businesses have suffered the same damage to property as Plaintiff.  Each of their inventory has decayed. Each has been ordered to make physical alterations in order to resume ordinary business." (Compl. ¶ 34.)  But as explained above, Plaintiff's alleged damages were not caused by a Covered Cause of Loss.  It therefore follows that the "damage to property other than property at the described premised"—which Plaintiff states is "the same" as the damage suffered by Plaintiff—was also not caused by a Covered Cause of Loss.

**B.** **Access to Plaintiff's Property Was Not Prohibited Due to Direct Physical Loss or Damage to Property Within One Mile of the Property.**

Plaintiff's claim for Civil Authority also fails because the losses sustained by Plaintiff were not "caused by civil authority that *prohibits access* to the described premises *due to direct physical loss or damage to property within one mile* of the described premises."

1.   Access to Plaintiff's Property Was Not Prohibited.

Despite Plaintiff's assertions to the contrary, Executive Order 2020-21 did not "prohibit[] access to the described premises."  Courts interpreting similar provisions recognize that "generally, coverage under the civil authority section is only available when access is *completely prohibited*." *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, No. A04-1963, 2005 Minn. App. LEXIS 585, at \*10 (Minn. Ct. App. June 7, 2005)

18

(emphasis added).  "[W]here the action of a civil authority merely hinders access to the covered premises, without completely prohibiting access, federal courts have held that such action is not covered[.]" *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-cv-02391, 2010 U.S. Dist. LEXIS 67092, at \*9-10 (M.D. Pa. July 6, 2010); *S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140-41 (10th Cir. 2004) (collecting cases denying coverage "where the civil authority order had only the indirect effect of restricting or hampering access to the business premises.").[12]

Here, the Governor's Order allowed "workers who are necessary to conduct basic operations" and to "sustain or protect life or to conduct minimum basic operations" to attend work.  (*See* **Ex. 1**.)  And it allowed individuals to leave their homes "to seek . . . dental care that is necessary to address a medical emergency." (*Id.* ¶ 7(a)(5).)  In other words, the Order did not require Plaintiff to close its dental practice or prohibit Plaintiff's employees or clients from accessing the practice.  It merely *limited* the dental procedures Plaintiff's practice could perform, and who could perform or receive those services.  Because access to Plaintiff's building was not "completely prohibited," coverage does not apply.

---

[12] Consistent with this, Michigan courts, applying even narrower policy language, have found civil authority coverage to apply when, due to the 1967 Detroit riots, the Governor's curfew—unlike the orders merely limiting access to property in *TMC Stores*, *Ski Shawnee*, and *Southern Hospitality*, and the Governor's Executive Order here—completely "closed all places of amusement in Detroit." *Sloan v. Phoenix of Hartford Ins. Co.*, 207 N.W.2d 434, 435 (Mich. Ct. App. 1973).

### 2. The Limitation on Plaintiff's Business Operations Was Not Caused by Damage to Adjacent Property.

Moreover, even if Plaintiff plausibly alleged a complete prohibition of access, Plaintiff has not plausibly alleged that the civil authority action (the Executive Order) prohibited access to Plaintiff's property "due to [the] direct physical loss or damage to property within one mile of the described premises."[13]

In this regard, Plaintiff has pleaded the opposite. In trying to avoid the virus exclusion, Plaintiff alleged that there has been no physical damage to Plaintiff's building or the surrounding buildings. Instead, Plaintiff alleges that the only damage sustained by the surrounding business was "the same damage to property as Plaintiff. Each of their inventory has decayed. Each has been ordered to make physical alterations." (Compl. ¶ 34.) There is no allegation—nor could there be—that the Executive Order limited access to Plaintiff's building because of this damage (decaying inventory and mandated structural alterations) to surrounding buildings. Rather, as the Executive Order makes clear, it was implemented to address the effects of COVID-19 on individuals. The virus has not caused any damage to property, nor does Plaintiff allege otherwise.[14] Because it cannot be said that access

---

[13] For example, this requirement has been satisfied when access to the insured's building was prohibited because of physical damage to a nearby building (the World Trade Center) arising out of the September 11 attacks. *See Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331 (S.D.N.Y. 2004).

[14] *See, e.g.*, *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, Case No. 20 Civ. 3311 (S.D.N.Y.) (May 14, 2020 Hr'g Tr. at 5, attached as **Ex. 4**) (explaining that the virus

20

to Plaintiff's property was prohibited due to physical damage to surrounding buildings, the claim for Civil Authority coverage should be dismissed.

## V. The Policy's Exclusions Bar Coverage.

Even if Plaintiff could allege facts that plausibly trigger coverage, the Policy makes clear that there is no coverage when certain "Exclusions" apply.

### A. The Virus Exclusion Bars Coverage.

Plaintiff alleges that the COVID-19 virus is not directly related to its losses. (Compl. ¶ 8.) Instead, Plaintiff states that the Executive Order "was the sole, direct and only proximate cause of the business losses," and that its losses "occurred in the absence of virus contamination." (*Id.* ¶¶ 6, 43.) The plain text of the Executive Order refutes these allegations, however. And regardless, any invitation to consider the proximate or direct cause misses the mark. Because the virus contributed directly or indirectly to the alleged loss, coverage is barred "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Policy, § B.1(i).)

The Executive Order was itself issued "[t]o suppress the spread of COVID-19." (*See* **Ex. 1**.) Thus, without the COVID-19 virus, there would have been no Executive Order and the alleged damages to Plaintiff's property would not have

"damages lungs. It doesn't damage printing presses."); *Gavrilides* (Hr'g Tr. at 19) ("The complaint here does not allege any physical loss of or damage to the property. The complaint alleges a loss of business due to executive orders shutting down the restaurants for dining . . . due to the Covid-19 threat.").

21

existed. In other words, the virus (at the very least) "indirectly" caused Plaintiff's alleged damages. *See SEC v. Jorissen*, 470 F. Supp. 2d 764, 771 n. 10 (E.D. Mich. 2007) ("While the outer contours of what constitutes an indirect cause may be unknown, it is clear that one of two but-for causes of an action must be within the meaning of an indirect cause, if not within the meaning of a direct cause."); *Lakeland Asphalt Corp. v. Westfield Ins. Co.*, 2012 U.S. Dist. LEXIS 12764, at *10 n.1 (W.D. Mich. Feb. 2, 2012) ("By including *indirect* causes, this provision excludes coverage of damage beyond that of damage caused by proximate cause."). As the Policy plainly states, it does not matter whether "any other cause or event," such as the issuance of an Executive Order, exacerbated or "contribute[d] concurrently or in any sequence to the loss." (ECF No. 1-2, PageID.90.) All that matters is that the damages claimed by Plaintiff were caused "directly or indirectly" by the virus, thereby excluding them from coverage.

Attempting to get around the virus exclusion's plain language, Plaintiff makes a passing allegation that the insurance industry "misrepresented to insurance regulators what the exclusion was for, misrepresented that it would not narrow coverage, and misrepresented the apparent purpose of the exclusion." (Compl. ¶ 41.) To be clear, Plaintiff is actually alleging that each and every one of the 50-plus insurance regulators was tricked into approving a standard exclusion without anyone finding out or objecting for more than a decade.

On its face this claim is implausible, and does not withstand even the slightest scrutiny. The allegation rests on a short and out-of-context excerpt of a July 2006 submission to the Insurance Services Office ("ISO"), which described the virus exclusion. (Compl. ¶ 42.) Plaintiff reads a portion of the ISO Circular and asserts that only "contamination removal costs" caused by viruses were to be excluded. (*Id.*) But the ISO Circular does not say that. Rather, consistent with the exclusion's plain language, the Insurance Commissioner approved for use of an exclusion for damages caused "directly or indirectly" by "contamination by disease-causing viruses."

It is not this Court's role to second-guess the policy reasons behind the exclusion, or why the Insurance Commissioner approved the language. Michigan's Supreme Court has recognized that "the Legislature has assigned the responsibility of evaluating the 'reasonableness' of an insurance contract to . . . the Commissioner of Insurance." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 34 (Mich. 2005) (citing Mich. Comp. Laws § 500.2236). Once the Commissioner approves the policy provision, as it did here, courts "have a very limited scope of review concerning the decisions made by the Commissioner." *Id.* (citing Mich. Comp. Laws § 500.244(1). "[T]he explicit 'public policy' of Michigan is that the reasonableness of insurance contracts is a matter for the executive, not judicial, branch of government. As such, [courts are] not free to invade the jurisdiction of the Commissioner and determine de novo whether [a] policy was reasonable." *Id.* at 35; *McDonald v. Farm Bureau Ins. Co.*,

23

747 N.W.2d 811, 818 (Mich. 2008) (Michigan courts do not "serve as an ombudsman, rewriting contracts and statutes in the name of 'public policy' whenever it appears that the plain terms of the text work some perceived inequity").

### B.   The Policy's Acts or Decisions Exclusion Bars Coverage.

Finally, in attempting to plead around the virus exclusion, Plaintiff has pleaded straight into the Policy's Acts or Decisions Exclusion, which excludes from coverage "loss or damage caused by or resulting from . . . Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." (Policy § B.3(b), PageID.92-93.)   In essence, Plaintiff's allegations that the Governor's Executive Order "was the sole, direct and only proximate cause of the business losses suffered by the Plaintiffs and the class," boils down to an argument that the acts or decisions of a "governmental body" caused Plaintiff's damages.

Thus, even assuming that Plaintiff had triggered the Policy's Business Income, Extended Business Income, or Civil Authority coverages in the first place, and that the virus exclusion did not apply, the Acts or Decisions Exclusion would still bar coverage. *See, e.g.*, *Legal Servs. Plan of E. Mich. v. Citizens Ins. Co. of Am.*, No. 278110, 2009 Mich. App. LEXIS 954, at \*8-9 (Mich. Ct. App. Apr. 30, 2009) (enforcing identical clause in a policy issued by Citizens); *Torres Hillsdale Country Cheese, L.L.C. v. Auto-Owners Ins. Co.*, No. 308824, 2013 Mich. App.

24

LEXIS 1547 (Mich. Ct. App. Oct. 1, 2013) (damages arising from government order preventing shipments of plaintiff's product due to listeria was excluded from coverage under acts or decisions exclusion).

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court enter an Order dismissing Plaintiff's claims with prejudice, and granting judgment in Defendants' favor.

Dated: July 22, 2020

By: /s/ *Lori McAllister*

Lori McAllister (P39501)
Theodore W. Seitz (P60320)
Kyle M. Asher (P80359)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, Michigan 48933
Telephone: (517) 374-9150
lmcallister@dykema.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2020, my assistant caused the foregoing to be electronically filed with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all counsel of record at their respective addresses as disclosed on the pleadings.

Dated: July 22, 2020

By: /s/ *Lori McAllister*
Lori McAllister (P39501)

*Attorney for Defendants*

010767.000075 4835-4045-3568.7

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

26