UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANFORD DENTAL, PLLC,

     Plaintiff,                       Case No. 20-cv-11384
                                         Hon. Matthew F. Leitman

v.

THE HANOVER
INSURANCE GROUP, INC., *et al.*,

     Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF No. 14)

Plaintiff Stanford Dental, PLLC purchased what it calls an "all-risk" insurance policy from Defendant Citizens Insurance Company of America (the "Policy"). In 2020, Stanford Dental made a claim for coverage under the Policy for losses it allegedly suffered after Michigan Governor Gretchen Whitmer issued an Executive Order that forced it to close for a period of time. Governor Whitmer issued the Executive Order to combat the COVID-19 pandemic. Citizens denied Stanford Dental's coverage claim for several reasons, including that the Policy precluded coverage for losses caused by viruses like COVID-19.

On May 29, 2020, Stanford Dental brought this putative class action against Citizens and The Hanover Insurance Group, Inc., the claims handler for Citizens. (*See* Compl., ECF No. 1.) Stanford Dental alleges that Defendants wrongfully

1

denied its claim for coverage under the Policy. (*See id.*)  Defendants have now moved to dismiss Stanford Dental's Complaint. (*See* Mot. to Dismiss, ECF No. 14.) The Court concludes that Stanford Dental lacks standing to sue Hanover and that the Policy exclusion for losses caused by viruses precludes coverage for Stanford Dental's alleged losses.  Therefore, for the reasons explained in more detail below, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES** Stanford Dental's Complaint.

# I

## A

Stanford Dental owns and operates a dental practice in Livonia, Michigan. (*See* Compl. at ¶11, ECF No. 1, PageID.5.)  At some point before June of 2019, Stanford Dental purchased the Policy from Citizens "in order to protect [its] dental practice" from a variety of losses. (*Id.*) Stanford Dental renewed the Policy for a one-year term beginning on June 8, 2019. (*See id.*; *see also* Policy Renewal Declarations, ECF No. 1-2, PageID.40.)

## B

On March 24, 2020, Governor Whitmer issued Executive Order No. 2020-21 in an effort to slow the spread of the COVID-19 pandemic in the State of Michigan

(the "Executive Order"). (*See* Executive Order, ECF No. 14-2.[1])  Governor Whitmer noted that "[t]he novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death." (*Id.*, PageID.242.)  She explained that "there [was] an increased risk of rapid spread of COVID-19 among persons in close proximity to one another" and that there was, at that time, "no approved vaccine or antiviral treatment for the disease." (*Id.*)  Governor Whitmer then made clear that the purposes of the Executive Order were to "suppress the spread of COVID-19," "prevent the state's health care system from being overwhelmed" by the virus, and "avoid needless deaths" caused by the virus. (*Id.*)

In order to accomplish these goals, the Executive Order required, to the extent possible, "all individuals currently living within the State of Michigan … to stay home or at their place of residence." (*Id.*, PageID.243.)  In addition, subject to certain exceptions, the Executive Order provided that "[n]o person or entity shall operate a business or conduct operations that require workers to leave their homes or places

---

[1] The Court may consider the text of the Executive Order when resolving Defendants' motion to dismiss because it is referenced and quoted in Stanford Dental's Complaint. *See*, *e.g.*, *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (explaining that "[f]airness and efficiency require" that "if a plaintiff references or quotes certain documents, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment").

of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum business operations." (*Id.*)

## C

Stanford Dental says the Executive Order "barred [it] from operating [its] business" and thereby caused it to lose business income. (Compl. at ¶28, ECF No. 1, PageID.10.)  The forced shutdown also caused Stanford Dental to suffer damage to its "dental equipment, certain lease equipment, medications with expiration dates, and other depreciating assets." (*Id.* at ¶31, PageID.11.)  It says that "[e]ach of these [items] has suffered loss of use, loss of functionality, decay, loss of value, and other forms of damage and/or loss."[2] (*Id.*)  Stanford Dental insists that the Executive Order was the "sole cause" of its losses and that the losses were not caused by COVID-19. (*Id.* at ¶36, PageID.12.)  Indeed, it says that "there is no evidence at all that the [COVID-19] virus [] enter[ed its] property or that [its property] had to be decontaminated" due to contamination from the virus. (*Id.* at ¶8, PageID.3-4.)

---

[2] For the purposes of resolving Defendants' motion to dismiss, the Court accepts as true Stanford Dental's allegation that it had to shut down its dental practice due to the Executive Order.  However, the Court notes that the Executive Order expressly allowed individuals to leave their homes to "seek medical *or dental care* that [was] necessary to address a medical emergency. (Executive Order, ECF No. 14-2, PageID.245; emphasis added.)  In addition, the Executive Order allowed workers to leave their homes to conduct "minimum business operations," which the order defined as operations required to "maintain the value of inventory and equipment." (*Id.*, PageID.244.)

4

**D**

On May 1, 2020, Stanford Dental "provided notice of its losses and expenses to Defendants" and sought insurance coverage for those losses under the "terms and procedures of the Policy." (*Id.* at ¶37, PageID.13.)  Stanford Dental says that it is entitled to coverage under three of those Policy "terms": the Business Income provision, the Extra Expense provision,[3] and the Civil Authority provision. (*Id.* at ¶10, PageID.4.)  The Business Income provision states that Citizens will "pay for the actual loss of Business Income that [Stanford Dental] sustain[ed] due to [a] necessary 'suspension' of [its] operations …. caused by … a Covered Cause of Loss."[4] (Policy, ECF No. 1-2, PageID.58.)  The Extra Expense provision says that

_____

[3] At different points throughout the Complaint, Stanford Dental appears to refer to the "Extra Expense" provision by several different names.  It alternatively refers to it as "Extended Expense Coverage" (Compl. at ¶10, ECF No. 1, PageID.4), "Extended Business Income" coverage (*id.* at ¶18, PageID.6), and "Extra Expense" coverage (*id.* at ¶102, PageID.30.)  In Stanford Dental's response to Defendants' motion to dismiss, Stanford Dental makes clear that these references are all to the "Extra Expense" provision of the Policy. (*See* Resp. to Mot. to Dismiss, ECF No. 17, PageID.315: "Two additional coverages are at issue, Extra Expense and Civil Authority.")  That conclusion is consistent with Stanford Dental's "Prayer For Relief" in the Complaint (*See* Compl., ECF No. 1, PageID.36: "Defendants Citizens and THG are obligated to pay for the full amount of the Business Income, Civil Authority and Extra Expense losses and expenses sustained and incurred….")  Ultimately, it does not matter what coverage provision Stanford Dental meant to refer to.  As explained in detail below, Stanford Dental is not entitled to coverage under any of the provisions it identifies because a policy exclusion for losses caused by viruses precludes Stanford Dental's claim for coverage under every one of the Policy's coverage provisions.

[4] The Policy describes "Business Income" as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage

if "loss or damage … [is] caused by … a Covered Cause of Loss," Citizens will "pay the necessary Extra Expense [Stanford Dental] incur[ed] … that [it] would not have incurred if there had been no direct physical damage to property at the described premises." (*Id.*, PageID.60.) Finally, the "Civil Authority" provision says that if "a Covered Cause of Loss cause[d] damage to property other than" Stanford Dental's property, and if a civil authority "prohibit[ed] access" to Stanford Dental's premises as a result of that loss to the other property, Citizens will "pay for the actual loss of Business Income [] sustain[ed] and necessary Extra Expense caused by [the] action of [the] civil authority." (*Id.*, PageID.61.)

Citizens denied Stanford Dental's claim for coverage in a letter written on Hanover letterhead. (*See* Compl. at ¶37, ECF No. 1, PageID.13.[5]) As mentioned above, Hanover provides claims handling for Citizens. (*See id.* at ¶12, PageID.5.)

In the denial letter, Citizens said that Stanford Dental did not qualify for coverage under the Business Income or Civil Authority provisions identified above.[6] (*See* Denial Ltr., ECF No. 1-4, PageID.161, 163-164.) Citizens also said that the

---

had occurred." (Policy, ECF No. 1-2, PageID.58.) "Business Income" also includes "[c]ontinuing normal operating expenses incurred, including payroll." (*Id.*)

[5] Stanford Dental attached a copy of the denial letter to its Complaint. (*See* Denial Ltr., ECF No. 1-4.)

[6] Citizens' denial letter did not reference the Extra Expense provision. It is unclear from the allegations in Stanford Dental's Complaint and the documents Stanford Dental attached to that pleading whether it ever actually made a claim for coverage under that provision of the Policy.

Policy's Exclusion for Loss Due to Virus or Bacteria (the "Virus Exclusion")

"preclude[d] coverage under all of the coverage provisions" identified by Stanford

Dental. (*Id.*, PageID.164.)

The Virus Exclusion provides that:

> We will not pay for loss or damage caused directly or
> indirectly by any of the following. Such loss or damage is
> excluded regardless of any other cause or event that
> contributes concurrently or in any sequence to the loss.
>
> [….]
>
> i. Virus or Bacteria
>
> (1) Any virus, bacterium or other microorganism that
> induces or is capable of inducing physical distress, illness
> or disease. (2) However, the exclusion in paragraph (1)
> above, does not apply to loss or damage caused by or
> resulting from "fungi", wet rot or dry rot . . . (3) With
> respect to any loss or damage subject to the exclusion in
> paragraph (1) above, such exclusion supersedes any
> exclusion relating to "pollutants." . . .

(Policy, ECF No. 1-2, PageID.88, 90.)

## II

After Citizens denied Stanford Dental's insurance claim, Stanford Dental filed

this putative class action against Citizens and Hanover. (*See* Compl., ECF No. 1.)

Stanford Dental seeks a declaratory judgment that it is entitled to coverage under the

Business Income, Extra Expense, and Civil Authority provisions of the Policy. (*See*

*id.* at Counts I, III, and V.) Stanford Dental also seeks damages for Defendants'

7

alleged breach of contract and wrongful denial of coverage. (*See id.* at Counts II, IV, and VI.)

Defendants have now moved to dismiss Stanford Dental's Complaint. (*See* Mot. to Dismiss, ECF No. 14.) The Court held a video hearing on Defendants' motion on January 27, 2021.

## III

Hanover has moved to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). (*See id.*, PageID.224-225.)   In the alternative, and together with Citizens, Hanover moves to dismiss Stanford Dental's under Federal Rule of Civil Procedure 12(b)(6). (*See id.*, PageID.225-239.)

Where, as here, a party raises a "facial attack on subject matter jurisdiction" under Rule 12(b)(1), "a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). *See also DLX Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2014) (explaining that where a Rule 12(b)(1) motion "attack[s] the claim of jurisdiction on its face," then "all allegations of the plaintiff must be considered as true").   The court then determines whether it has subject matter jurisdiction based on those allegations. *See id.*

"To survive a motion to dismiss" under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id*.  When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).  "Mere conclusions," however, "are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.  A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV

The Court begins with Hanover's argument that "all claims raised against [it] should be dismissed for lack of Article III standing." (Mot. to Dismiss, ECF No. 14, PageID.224.)  The Court agrees.

Stanford Dental "lacks standing to pursue [its] claims against [Hanover] because [its] injury is not traceable to [Hanover]." *Perry v. Allstate Indemnity Co.*, 953 F.3d 417, 420 (6th Cir. 2020).  Hanover is not a party to the Policy and did not

owe any coverage obligations to Stanford Dental under the Policy.  Thus, Stanford Dental's alleged losses from the failure to provide coverage are not traceable to Hanover.  Accordingly, Stanford Dental lacks standing to sue Hanover.

The United States Court of Appeals for the Sixth Circuit reached this same conclusion in *Perry*.  In that case, an insured filed suit against Allstate Indemnity Company and several related Allstate entities.  But only Allstate Indemnity was a party to the relevant insurance agreement.  The Sixth Circuit concluded that the plaintiff lacked standing to sue the entities that were not party to the insurance agreement, and it ordered the district court to dismiss those entities from the suit. *See id.*  The same reasoning applies here with respect to Hanover.

Stanford Dental counters that it does have standing to sue Hanover because Hanover administered claims by Citizens' policyholders in Michigan and because the letter denying Stanford Dental's insurance claim was drafted on Hanover letterhead. (*See* Resp. to Mot. to Dismiss at n.2, ECF No. 17, PageID.310-311.)  But Stanford Dental has not cited any authority for the proposition that an insured has standing to assert a civil claim for breach of an insurance agreement against a third-party claims handler who is not a party to the policy at issue.  And at the hearing on Defendants' motion to dismiss, Stanford Dental's counsel candidly admitted he was not aware of any such authority.

10

For the reasons explained in *Perry*, the Court concludes that because Hanover is not a party to the Policy, Stanford Dental lacks standing to pursue its breach of contract and declaratory judgment claims against Hanover. The Court therefore **GRANTS** Defendants' motion to dismiss the claims brought against Hanover.

## V

The Court now turns to the merits of Stanford Dental's causes of action against Citizens. The Court concludes that the Virus Exclusion precludes Stanford Dental's claim for insurance coverage. Stanford Dental's breach of contract and declaratory judgment claims therefore fail as a matter of law.

## A

Michigan law governs this diversity action brought pursuant to 28 U.S.C. § 1332. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). The principles of contract interpretation in the context of insurance disputes under Michigan law are "well-settled." *Turek Enterprises, Inc. v. State Farm Mut. Auto. Co.*, --- F.Supp. 3d ---, 2020 WL 5258484, at *5 (E.D. Mich. Sept. 3, 2020) (Ludington, J.). In *Turek*, Judge Ludington of this court recently explained those principles as follows:

> "[A]n insurance contract must be enforced in accordance with its terms." *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 596 N.W.2d 190, 193 (1999). "Terms in an insurance policy must be given their plain meaning and the court cannot create an ambiguity where none exists." *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 534 N.W.2d 502, 505 (1995) (internal quotation marks omitted). Michigan defines "an ambiguity in an

11

> insurance policy to include contract provisions capable of conflicting interpretations." *Auto Club Ins. Ass'n v. DeLaGarza*, 433 Mich. 208, 444 N.W.2d 803, 805 (1989). Ambiguous terms "are construed against its drafter and in favor of coverage." *Id.* at 806.
>
> "Michigan courts engage in a two-step analysis when determining coverage under an insurance policy: (1) whether the general insuring agreements cover the loss and, if so, (2) whether an exclusion negates coverage." *K.V.G. Properties, Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018) (citing *Auto-Owners Ins. Co. v. Harrington*, 455 Mich. 377, 565 N.W.2d 839, 841 (1997)).

*Id.* at *5. *See also Kirsch, DDS v. Aspen Am. Ins. Co.*, 2020 WL 7338570, at ** 2-3 (E.D. Mich. Dec. 14, 2020) (same).

Under Michigan law, an insurer "bear[s] the burden of showing that any exclusion to coverage applie[s]." *Turek*, --- F.Supp.3d ---, 2020 WL 5258484, at *8. Such "[i]nsurance exclusion clauses are to be construed strictly and narrowly." *RealComp II, Ltd. v. Ace American Ins. Co.*, 46 F.Supp.3d 736, 741 (E.D. Mich. 2014). However, "clear and unambiguous exclusions in insurance policies" should be enforced. *Id. See also Turek*, --- F.Supp.3d ---, 2020 WL 5258484, at *5 ("Policy provisions, such as exclusions, are valid as long as [they are] clear, unambiguous and not in contravention of public policy") (internal quotation marks omitted).

**B**

The parties vigorously dispute whether Stanford Dental is entitled to coverage under the Business Income, Extra Expense, and Civil Authority provisions of the Policy. But the Court need not resolve whether Stanford Dental is entitled to coverage under those coverage provisions. "*Even assuming* [that Stanford Dental] has adequately alleged that [its] claims are encompassed by" those provisions, Stanford Dental's "breach of contract [and declaratory judgment] claim[s] fail[] because [Citizens] has demonstrated that the Policy contains a '[V]irus [E]xclusion' that is plainly applicable to [Stanford Dental's] insurance claim." *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, --- F.Supp.3d ---, 2020 WL 6578417, at *6 and n.7 (W.D. Tex. Oct. 26, 2020) (emphasis in original) (proceeding directly to question of whether virus exclusion in insurance policy precluded coverage rather than first determining whether alleged losses fell within coverage provisions of policy).[7]

---

[7] Where, as here, a policy exclusion plainly precludes coverage, it is appropriate for a court to bypass the question of whether an insured's losses fall within a coverage provision of the policy and to proceed directly to the exclusion. *See e.g., Massey v. Knowles*, 2006 WL 2552797, at *6 (D. Ore. Sept. 1, 2006) ("National Union argues that coverage was not triggered, or if it was triggered at least one exclusion precludes recovery. Because the policy exclusion issues are straightforward and dispositive, the court will assume without deciding that coverage was triggered"); *Famer ex rel Hansen v. Allstate Ins. Co.*, 311 F.Supp.2d 884, 893 (C.D. Cal. 2004) ("While the Court feels that Mrs. Varela's negligent conduct is not an 'occurrence' as defined in the Varela Policy, the Court need not decide this issue because other provisions of the Varela Policy unequivocally preclude coverage").

Because the Virus Exclusion precludes coverage, Stanford Dental cannot succeed on any of its breach of contract or declaratory judgment claims.

As quoted above, the Virus Exclusion precludes coverage where loss or damage is caused, "directly or indirectly" by any "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease," regardless "of any other cause or event that contributes concurrently or in any sequence to the loss." (Policy, ECF No. 1-2, PageID.88, 90.)  Stanford Dental's losses fall within this exclusion.  Stanford Dental suffered those losses when Governor Whitmer issued the Executive Order that forced Stanford Dental to close its doors.  Critically, she issued that order to "suppress the spread of COVID-19." (Executive Order, ECF No. 14-2, PageID.242.)   But for COVID-19, Governor Whitmer would not have issued her order, and Stanford Dental would not have closed and suffered losses.  The virus was thus an essential link in the chain of causation leading to Stanford Dental's losses.  And the virus was not a remote link somewhere far down in the chain of causation.  Instead, it was the direct and sole cause of the Executive Order that required Stanford Dental to close its doors and suffer losses.  Moreover, the Virus Exclusion applies even though the virus, alone, did not cause Stanford Dental's losses.  Indeed, the exclusion applies where a virus and another factor (here, Governor Whitmer's Executive Order) "contribute[d] concurrently" to an insured's loss.  (Policy, ECF No. 1-2, PageID.88, 90.)  For all of

14

these reasons, Stanford Dental's claim for coverage is precluded by the Virus Exclusion.

Many courts agree that virus exclusions like the one in the Policy bar claims for losses by policyholders who were forced to close by government orders issued in response to COVID-19. For example, in *Turek*, *supra*, Judge Thomas Ludington concluded that a nearly-identical virus exclusion precluded coverage for losses incurred by a plaintiff who was forced to cease its operations by Governor Whitmer's Executive Order. *See Turek*, --- F.Supp. 3d ---, 2020 WL 5258484, at ** 2-3, 8 (quoting exclusion). He explained that because Governor Whitmer issued the Executive Order "to suppress the spread of COVID-19 and accompanying public health risks … [t]he only reasonable conclusion [was] that the [Executive] Order— and, by extension, [p]laintiff's business interruption losses—would not have occurred but for COVID-19." *Id.* (internal quotation marks omitted). Since the virus played such a key role in the chain of causation, the virus exclusion applied. *See id.*

Judge Charles Breyer came to the same conclusion in *Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*, --- F.Supp.3d ---, 2020 WL 7247207 (N.D. Cal. Dec. 9, 2020). In *Fountain*, a group of policy owners submitted insurance claims for losses arising out of stay-at-home orders that the City of San Francisco and the State of California issued in response to the COVID-19 pandemic. *See id.* at *1. The plaintiffs' insurer denied coverage under a virus exclusion that is virtually identical

to the Virus Exclusion in this case. *See id.* at *2.  The plaintiffs then filed suit.  The insurance company moved to dismiss, and Judge Breyer granted the motion.  He held that the plaintiffs' "cause of loss [] falls squarely within the Virus Exclusion," and he explained that the plaintiffs could not "convincingly argue that its losses were caused by the [] governmental orders while ignoring that those governmental orders were themselves caused by a virus." *Id.* at ** 4-5.

Finally, the United States District Court for the Western District of Texas reached the same result in *Diesel Barbershop, LLC v. State Farm Lloyds*, --- F.Supp.3d ---, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020).  In *Diesel Barbershop*, a group of barbershops were forced to "cease[] all activities" and close their businesses due to executive orders issued in their county (Bexar County) and the State of Texas. *See id.* at *1.  Those executive orders were issued "[t]o stop 'community spread' of COVID-19." *Id.*  The barbershops thereafter "filed a claim with [their insurance company] seeking coverage for business interruption," and the insurance company denied coverage under a virus exclusion nearly identical to the Virus Exclusion here. *See id.* at *3.  The barbershops then filed suit. *See id.*  The district court granted the insurance company's motion to dismiss and held that the virus exclusion "bar[red] [p]laintiffs' claims." *Id.* at *6.  In reaching that conclusion, the court rejected the barbershops' argument that the government closure orders, and not COVID-19, caused their losses:

16

> Guided by the plain language of the Policies, the Court finds that Plaintiffs have pleaded that COVID-19 is in fact the reason for the [government closure orders] being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing. [….] Thus, the Court find that the Policies' [Virus Exclusion] excluded coverage for the losses Plaintiffs incurred in complying with the Orders.

*Id. See also Part Two LLC v. Owners Ins. Co.*, 2021 WL 135319, at *3 (N.D. Ala. Jan. 14, 2021) ("Of course a virus directly or indirectly caused COVID-19-related damage and COVID-19-related orders. By causing that damage and by causing those orders, a virus caused Part Two's alleged harm—lost income 'as a result of COVID-19 and mandatory government orders.' This unambiguously places Part Two's alleged loss outside the policy and outside Owners' contracted-for risk").

For all of these reasons, the Virus Exclusion bars Stanford Dental's claim for coverage under the Policy, and its breach of contract and declaratory judgment claims therefore fail as a matter of law.

## C

Stanford Dental offers several counter arguments as to why the Virus Exclusion does not preclude coverage under the Policy as a matter of law.  Its arguments are thoughtful and well presented.  However, for the reasons explained

below, the Court remains convinced that the Virus Exclusion precludes Stanford Dental's claim for coverage.

**1**

Stanford Dental first argues that its losses were caused by Governor Whitmer's Executive Order, *not* by the COVID-19 virus. (Resp. to Mot. to Dismiss, ECF No. 17, PageID.328-329.)  It highlights that COVID-19 was not found within its premises and that it did not close due to a COVID-19 contamination.  It insists that because its losses were "a natural, unbroken consequence of the [Executive] Order," the Virus Exclusion does not apply. (*Id.*)  The Court disagrees.

This argument proceeds from the erroneous premise that the Virus Exclusion applies only where a virus is the most immediate and direct cause of an insured's losses.  But as noted above, the Virus Exclusion applies even where some "other cause or event contributes concurrently or in any sequence to the loss." (Policy, ECF No. 1-2, PageID.88, 90.)  Thus, even though COVID-19 was not necessarily the *sole* or most immediate cause of Stanford Dental's losses, and even though Governor Whitmer's Executive Order also played a concurrent role in those losses, the Virus Exclusion still precludes Stanford Dental's claim for insurance coverage.

Judge Ludington reached this same conclusion in *Turek*.  Indeed, he rejected the precise argument that Stanford Dental makes here – that a virus exclusion did not preclude coverage because Governor Whitmer's Executive Order "was the sole,

18

direct, and only proximate cause of [p]linaitff's losses." *Turek*, --- F.Supp. 3d ---, 2020 WL 5258484, at *8. Judge Ludington concluded that that argument was "refuted by the [Executive] Order" itself" because the order made clear it was issued in direct response to the spread of COVID-19. *Id.* He also explained that the argument "essentially disregard[ed]" the provision of the Policy that "extend[ed] the [v]irus [e]xclusion to all losses where a virus is part of the causal chain." *Id.* Thus, he held that "even if the [Executive] Order were a more proximate cause than COVID-19, coverage would still be excluded." *Id. See also Moody v. The Hartford Finance Group, Inc.*, 2021 WL 135897, at *9 (E.D. Penn. Jan. 14, 2021) (holding that virus exclusion applies even though insured was forced to close by a government order issued in response to the virus); *Fountain*, --- F.Supp.3d ---, 2020 WL 7247207, at *4 (same) *Diesel Barbershop*, --- F.Supp. 3d   ---, 2020 WL 4724305, at **6-7 (same). The Court shares Judge Ludington's view that the Virus Exclusion bars coverage even though Governor Whitmer's order may have been the most immediate cause of Stanford Dental's alleged losses.[8]

---

[8] Stanford Dental says that applying the Virus Exclusion so as to bar its claim for coverage – as the Court does here – will "lead to absurd situations." (Resp. to Mot. to Dismiss, ECF No. 17, PageID.330.) Stanford Dental offers a hypothetical to illustrate its point. Stanford Dental says that as interpreted and applied by the Court, the Virus Exclusion would bar a claim for coverage under the Policy if there was a "small waste can fire at [Stanford Dental's] premises," and if the fire department never arrived because the driver of the fire engine "passe[d] out due to viral pneumonia." (*Id.*) This hypothetical did not persuade Judge Ludington to alter his decision in *Turek*, and it does not persuade the Court to change its conclusion that

**2**

Next, Stanford Dental argues that the Virus Exclusion does not preclude its claim for coverage as a matter of law because the exclusion is ambiguous.[9]  Stanford Dental contends that a jury must resolve the ambiguity and determine whether the Virus Exclusion bars its claim for coverage.

Stanford Dental says that the Virus Exclusion is ambiguous because it is susceptible to at least two reasonable constructions.  According to Stanford Dental, even if the exclusion can be read – as the Court reads it – as applying even where a virus does not physically enter an insured's property, the exclusion may also reasonably be read as applying only where a virus has physically contaminated that property.  The Court disagrees.  There is no language in the Virus Exclusion that limits the exclusion to instances of physical contamination by a virus.  As quoted above, the Virus Exclusion provides that Citizens "will not pay for loss or damage caused directly or indirectly by …. [a]ny virus, bacterium or other microorganism

---

the Virus Exclusion applies here.  As Judge Ludington explained, it is not the Court's job to "speculate on the outer limits of coverage" under the Policy. *Turek*, --- F.3d ---, 2020 WL 5258484, at *8.  Here, as described above, COVID-19 was not some remote, incidental cause that led to Stanford Dental's claimed losses (as the viral pneumonia is in Stanford Dental's hypothetical).  Because the Executive Order was issued as a direct and immediate result of the COVID-19 virus, the Virus Exclusion precludes coverage for Stanford Dental's losses.

[9] To be clear, Stanford Dental offered its ambiguity argument in the alternative.  Its primary argument is that the Virus Exclusion cannot reasonably be read to preclude coverage.

that induces or is capable of inducing physical distress, illness or disease" even if "any other cause or event that contributes concurrently or in any sequence to the loss." (Policy, ECF No. 1-2, PageID.88, 90.)   Nothing in this text ties the applicability of the exclusion to physical contamination.  Thus, the exclusion may not reasonably be read as limited to instances of such contamination, and for that reason, the Court rejects Stanford Dental's ambiguity argument.  Nor has Stanford Dental identified any decision by any court that has held that an exclusion with language like that included in the Virus Exclusion is ambiguous.  And several courts have held that nearly identical virus exclusions are not ambiguous and do not bar coverage. *See*, *e.g.*, *Vizza Wash*, --- F.Supp.3d ---, 2020 WL 6578417, at ** 7-8 (collecting cases and holding that virus exclusion "unambiguously exclude[d] coverage"); *Moody*, 2021 WL 135897, at *9 (E.D. Penn. Jan. 14, 2021) (holding that virus exclusion was "clear and unambiguous" and precluded plaintiff's claim for coverage); *Diesel Barbershop*, --- F.Supp.3d ---, 2020 WL 472305, at *6 (same). Since the Virus Exclusion unambiguously applies to Stanford Dental's alleged losses, the Court may properly dismiss Stanford Dental's claims at this stage.

### 3

Stanford Dental further asserts that the doctrine of regulatory estoppel prevents Citizens from denying coverage based upon the Virus Exclusion. (*See* Resp. to Mot. to Dismiss, ECF No. 17, PageID.331-332.)  Under this doctrine, "[i]f

an insurer represents to a regulatory agency that new language in a policy will not result in decreased coverage, the insurer cannot assert the opposite position when insureds raise the issue in litigation." *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, --- F.Supp.3d ---, 2020 WL 6545893, at *4 (E.D. Penn. Nov. 6, 2020).

Stanford Dental says that regulatory estoppel applies here because Citizen's denial of coverage contravenes representations Citizens made to Michigan's insurance regulators when Citizens sought approval to add the Virus Exclusion to its policies. Stanford Dental claims that when Citizens requested permission to add the Virus Exclusion to its policies, it represented to Michigan regulators that the exclusion would preclude coverage only where a virus physically contaminated an insured's property. (*See* Resp. to Mot. to Dismiss, ECF No. 17, PageID.331-332; *see also* Compl. at ¶¶ 42, 46, ECF No. 1, PageID.14-16.) Stanford Dental argues that because Citizens won approval for the Virus Exclusion based on this representation, regulatory estoppel bars Citizens from denying coverage under the exclusion where, as here, a virus has not contaminated the insured's property. The Court disagrees.

Stanford Dental has not persuaded the Court that Michigan courts would apply regulatory estoppel to limit the scope of an unambiguous policy exclusion like the Virus Exclusion. It has not cited any case in which any Michigan court, or any court applying Michigan law, has applied the doctrine, and the Court is not aware of any such decision. Moreover, there is reason to believe Michigan courts would *not* apply

regulatory estoppel to narrow the scope of a clear policy exclusion. Regulatory estoppel necessarily looks outside the four corners of an insurance policy. It narrows a policy exclusion – even one that is unambiguous – based upon representations to state officials that are not part of the policy. That approach to policy construction seems at odds with Michigan law. Indeed, the Michigan Supreme Court has held that extrinsic evidence may not be "used as an aid in the construction of [an unambiguous insurance] contract." *City of Grosse Pointe Park v. Michigan Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 115-16 (Mich. 2005). And the Sixth Circuit has indicated that where the highest court of a state declines to look beyond the four corners of an unambiguous insurance policy, applying the doctrine of regulatory estoppel to limit a clear policy exclusion would be inconsistent with the law of that state. *See Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 373 (6th Cir. 1995) (refusing to apply regulatory estoppel where language of policy exclusion was clear and where Kentucky law barred consideration of extrinsic evidence to vary the terms of an unambiguous contract). For these reasons, the Court is not persuaded that Stanford Dental may rely upon the doctrine of regulatory estoppel to narrow the broad scope of the Virus Exclusion to instances of physical virus contamination.

Judge Ludington reached the same conclusion in *Turek*. The plaintiff insured in that case raised the identical regulatory estoppel argument that Stanford Dental raises here. Judge Ludington rejected it. He concluded that even if the insurance

23

carrier had represented to regulators that the virus exclusion at issue in that case was limited to instances of physical virus contamination, the exclusion could not be limited to that scope under the doctrine of regulatory estoppel because "the plain, unambiguous meaning of the [v]irus [e]xclusion today negates coverage" even absent physical contamination. *Turek*, --- F.Supp.3d ---, 2020 WL 5258484, at *9. *See also 1210 McGavock Street Hospitality Partners*, 2020 WL 7641184, at *6 (Trauger, J.) (rejecting effort to limit the scope of an unambiguous virus exclusion under the doctrine of regulatory estoppel).[10] For all of these reasons, Stanford Dental

---

[10] There are two additional potential problems with Stanford Dental's regulatory estoppel argument. First, the argument is based upon the premise that Citizens made representations concerning the scope of the Virus Exclusion in a circular drafted by the Insurance Services Office (the "ISO Circular"), but Stanford Dental has not clearly alleged that (1) Citizens (or anyone else) actually presented that circular to Michigan regulators or (2) Michigan regulators actually read and relied upon the circular in approving the Virus Exclusion. Second, there may be at least some question as to whether the denial of Stanford Dental's claim for coverage is, in fact, inconsistent with the representations in the ISO Circular. The ISO Circular (which is attached to Stanford Dental's Complaint at ECF No. 1-5) did draw at least some link between the Virus Exclusion and physical contamination by a virus, but the circular also referred to losses caused by a "pandemic." (ISO Circular, ECF No. 1-5, PageID.171.) For this reason, some courts have held that denying coverage for a claim like Stanford Dental's is not necessarily inconsistent with the representations in the ISO Circular and have declined to apply regulatory estoppel based upon those representations. *See*, *e.g.*, *Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, --- F.Supp.3d ---, 2020 WL 6827742, at *5 (D. Ari. Nov. 20, 2020) (rejecting regulatory estoppel argument and concluding that "the ISO Circular is clear that the Virus Exclusion is meant to exclude losses caused by pandemics. Assuming regulators did rely on the ISO document, they would have been aware of its effect on future coverage") (internal citation omitted); *NewChops Restaurant Comcast LLC v. Admiral Ins. Co.*, --- F.Supp.3d ---, 2020 WL 7395153, at ** 9-10 (E.D. Penn. Dec. 17, 2020) (rejecting regulatory estoppel on ground that "the insureds have not

has not persuaded the Court that regulatory estoppel should bar Citizens from relying upon the Virus Exclusion.

**4**

During the hearing on Defendants' motion to dismiss, the Court asked Stanford Dental to identify its strongest authority for the proposition that the Virus Exclusion did not preclude its claim for coverage as a matter of law.  Stanford Dental identified the decision of the United States District Court in the Northern District of Ohio in *Henderson Road Restaurant Sys., Inc. v. Zurich American Ins. Co.*, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021).  In *Henderson Road*, the plaintiff claimed that it was entitled to insurance coverage for losses it suffered when it had to close its restaurants due to stay-at-home orders issued by various state governments. *See id.* at *1.  The defendant insurer moved for summary judgment and argued, among other things, that coverage was barred by an exclusion in the plaintiff's insurance policy that precluded coverage for losses caused by microorganisms.  *See id.* at *3. The district court declined to hold that the microorganism exclusion precluded coverage as a matter of law and denied the insurer's summary judgment motion. *See id.* at *15.

---

identified how [the denial of coverage under a virus exclusion] contradicts ISO's earlier statements").

*Henderson Road* does not provide strong support for Stanford Dental's position because there are significant differences between the microorganism exclusion in *Henderson Road* and the Virus Exclusion in the Policy here.  The microorganism exclusion in *Henderson Road* stated that "[w]e will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of 'microorganisms.'" *Id.* at *3.  And it also said that "[w]e will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of 'microorganisms.'" *Id.*  The references in the microorganism exclusion to "growth," "proliferation," "remov[al]," and "clean up" could perhaps suggest that that the microorganism exclusion applied only where a microorganism directly and physically contaminated the insured's premises.  Thus, it is understandable that the court in *Henderson Road* rejected the insurance carrier's argument that the exclusion necessarily barred coverage even where there were no allegations of contamination. The Virus Exclusion here, in sharp contrast, contains no references to "proliferation," "remov[al]," or clean up," nor does the exclusion contain any language limiting its application to instances of physical contamination.  Thus, the Virus Exclusion is not susceptible to the narrower reading of the microorganism

26

exclusion in *Henderson Road*. Thus, the denial of summary judgment in Henderson Road says little, if anything, about whether the Virus Exclusion precludes Stanford Dental's claim for coverage.

In a supplemental filing, Stanford Dental also directed the Court to the decision in *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co.*, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020). In *Urogynecology Specialist*, the plaintiff medical practice was "was forced to close its doors for a period of time in March 2020 and could not operate as intended" due to an executive order that the Governor of the State of Florida issued in response to the COVID-19 pandemic. *See id.* at *1. "Plaintiff notified [its insurer] of its losses associated with the medical office closing due to the ongoing pandemic and [the insurer] denied coverage." *Id.* The plaintiff then filed suit. The insurer moved to dismiss and argued that "the plain language of the [plaintiff's] policy exclude[d] coverage for [p]laintiff's losses. Specifically, [the insurer] argue[d] that the [p]olicy expressly exclude[d] losses caused by a virus." *Id.* at *3. The district court denied the motion. The court explained that the record before it was not complete, and it therefore could not conclude as a matter of law that the virus exclusion at issue "unambiguously and necessarily exclude[d p]laintiff's losses." *Id.* at *4. ("Without the corresponding forms which are modified by the exclusions, this [c]ourt will not make a decision on the merits of the plain language of the [p]olicy to determine whether [p]laintiff's losses were covered").

Here, in contrast, the Court does have a complete copy of the Policy and the relevant Virus Exclusion.  Thus, unlike the court in *Urogynecology Specialist*, this Court *is* in a position to make a definitive ruling about whether the Virus Exclusion bars Stanford Dental's insurance claim.  Moreover, the language of the virus exclusion in in *Urogynecology Specialist* differs from the Virus Exclusion in the Policy.  The exclusion in *Urogynecology Specialist* referred to the "presence, growth, proliferation, spread, or any activity of … [a] virus." *Id.*  Thus, the exclusion in that case appears more like the potentially ambiguous microorganism exclusion in *Henderson Road* than the Virus Exclusion here.  For all of these reasons, courts have distinguished and declined to follow *Urogynecology Specialist*, and the Court does the same here. *See*, *e.g.*, *1210 McGavock Street Hospitality Partners, LLC v. Admiral Indem. Co.*, 2020 WL 7641184, at *6 (M.D. Tenn. Dec. 23, 2020) (Trauger, J.) (declining to follow *Urogynecology Specialist* where, as here, the relevant policy was in the record, and holding that "the clear and unambiguous language of the Virus Exclusion Clause precludes coverage of the plaintiff's claims"); *N&S  Restaurant LLC v. Cumberland Mut. Fire Ins. Co.*, 2020 WL 6501722, at * (D. N.J. Nov. 5, 2020) (same); *Motor and Pestle Corp. v. Atain Specialty Ins. Co.*, 2020 WL 7495180, at * (N.D. Cal. Dec. 21, 2020) (same).

Stanford Dental has failed to persuade the Court that the Virus Exclusion does not bar its claim for coverage.

# VI

Finally, during the hearing on Defendants' motion to dismiss, counsel for Stanford Dental asked for leave to file an Amended Complaint substituting a new plaintiff in the event that the Court dismissed Stanford Dental's Complaint based upon the Virus Exclusion. Counsel explained that it was his understanding that not all members of the putative class have an insurance policy that contains the Virus Exclusion. Counsel sought permission to add as a new plaintiff in an Amended Complaint one of the class members whose policy does not contain the Virus Exclusion.

The Court declines to grant leave to amend under these circumstances. Counsel has not filed a formal motion to amend nor presented a proposed Amended Complaint. Much more importantly, counsel has not identified a specific substitute plaintiff who may have a viable claim for coverage that is not precluded by the Virus Exclusion. The Court has only counsel's belief that some unidentified class members may have policies that do not include the Virus Exclusion. That is not enough to warrant leave to amend.

The only claims for relief now before the Court are those brought by *Stanford Dental,* and those claims are barred by the Virus Exclusion and may not be saved by amendment. As the Court in *Turek* stated when rejecting a similar request to amend by Stanford Dental's counsel, if other class members believe that they can assert a

29

viable action against Citizens, they "are free to bring their own action." *Turek*, --- F.Supp.3d ---, 2020 WL 5258484, at *8 n.11.  This action, however, will be dismissed.

**VII**

For all of the reasons stated above, Defendants' motion to dismiss (ECF No. 14) is **GRANTED**.  This action is **DISMISSED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 10, 2021